Clara MAGEE, Plaintiff,

v.

Joseph CALIFANO, Jr., as Secretary of the Department of Health, Education, and Welfare, Defendant.

Civ. No. 79-305.

United States District Court, W. D. New York.

July 8, 1980.

Southern Tier Legal Services, Paul M. Ryther, Corning, N. Y., of counsel, for plaintiff.

Richard J. Arcara, U. S. Atty., Buffalo, N. Y., Jack S. Penca, Asst. U. S. Atty., of counsel, for defendant.

## MEMORANDUM AND ORDER

ELFVIN, District Judge.

Plaintiff has initiated this action pursuant to section 205(g) (42 U.S.C. § 405(g)) of the Social Security Act ("the Act") to obtain judicial review of an administrative decision of the Secretary of Health, Education and Welfare ("the Secretary") which terminated disability insurance benefits and Supplemental Security Income ("SSI") benefits granted previously to her. The parties have crossmoved for summary judgment.

Plaintiff filed applications for disability insurance benefits and for SSI benefits. Her application for disability insurance benefits was denied initially by the Social Security Administration ("the Administration") November 19, 1976; her application for SSI benefits was denied initially by the Administration on or about that date. Such denials were based upon a finding by the Bureau of Disability Determinations for the State of New York ("the state agency") that plaintiff was not under a disability. Upon reconsideration the state agency found that plaintiff was under a disability beginning April 23, 1976. Said finding of disability was based upon a medical report dated April 26, 1977 by Doctor A who examined plaintiff April 22, 1977 at the request of the state agency. In or about May 1977 the Administration adopted the state agency's finding of disability and upon reconsideration granted plaintiff's applications for disability insurance benefits and for SSI benefits retroactive to April 23, 1976. About one year later, the state agency reevaluated plaintiff's applications for benefits and determined June 21, 1978 that her disability had ceased in May 1978. Said finding of cessation of disability was based upon a medical report dated May 9, 1978 by Doctor A who reexamined plaintiff May 5, 1978 at the state agency's request and upon a medical report dated April 10, 1978 by plaintiff's treating physician, Doctor S. The Administration once again adopted the state agency's finding and terminated plaintiff's disability insurance and SSI benefits. Plaintiff requested a *de novo* hearing and such was held before an Administrative Law Judge ("the ALJ") October 20, 1978. The ALJ issued a decision November 24, 1978 wherein he made the following findings of conclusive and ultimate facts:

"The claimant is 50 years of age and was educated through the seventh grade of grammar school.

"The claimant suffered an injury to her back while at work on April 23, 1976.

"As a result of this injury, the claimant was found eligible for supplemental security income and for disability insurance benefits effective April 23, 1976.

"While claimant may not be able to return to her regular job at this point, the medical evidence of record clearly indicates that she is employable providing the job does not involve lifting or bending.

"The claimant has a residual functional capacity to sit for three hours, stand for one hour, and walk for one hour.

"The claimant has the residual functional capacity to do sedentary work.

"Based on the record as a whole, the claimant's disability ceased as of May 1978, and consequently July 1978 was the last month in which she was eligible for either supplemental security income or title II disability insurance benefits."

The ALJ's decision became final February 24, 1979 when it was approved by the Appeals Council.

■ It is well established that the Secretary's factual findings must be upheld if they are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Levine v. Gardner*, 360 F.2d 727, 729 (2d Cir. 1966). However, where evidence has not been evaluated properly because of an erroneous view of law, the determination of the Secretary will not be upheld. *Northcutt v. Califano*, 581 F.2d 164, 167 (8th Cir. 1978); *see, Cutler v. Weinberger*, 516 F.2d 1282, 1285–86 (2d Cir. 1975).

■ Plaintiff claims that the findings of the Secretary are not supported by substantial evidence, that the Secretary applied an improper burden of proof standard in evaluating the evidence and that the Secretary's findings are not sufficiently specific to permit adequate judicial review. The Secretary opposes such arguments and asserts that his findings are supported by substantial evidence.

Plaintiff is a 52-year old woman with a seventh grade education. She worked for 17 years as a laborer in a garment factory and more recently for three years as a "coremaker" at a foundry. The back injury which forms the basis of plaintiff's claim of disability occurred April 23, 1976 while plaintiff was working as a coremaker.

Only plaintiff offered testimony at her administrative hearing. The testimony may be summarized as follows.

Plaintiff stated that before commencing work April 23, 1976 she went to a bin to fill her sand bag. When she reached down into the bin with her sand bag, she injured her back and was unable to return to an erect position for some minutes.

Plaintiff testified that her job at the garment factory required her to fold and to place undergarments in boxes for shipments. She usually stood while performing such tasks but occasionally sat down while working. She stated that the job of coremaker required long periods of standing and involved considerable lifting and carrying.[1]

With regard to her subjective symptomology, plaintiff testified that she is in constant pain, that she is unable to stand for any length of time, that she can sit for periods of only twenty minutes at a time, that walking across the road to her sister's home aggravates the pain and that the pain interferes with her sleep. She stated that she prepares her own meals (but does not use her oven because of her inability to bend), that she dresses herself and cleans her mobile home. She further testified that she often visits with her sister and that she watches television during such visits.

The medical evidence may be summarized as follows.

Records from Jones Memorial Hospital ("the hospital") indicate that plaintiff was admitted from the emergency room April 26, 1976 as the result of a back injury

---

1. I presume that this job involved the operation of a machine designed to make cores for molds into which molten metal would be poured. The record does not reflect whether such machine was operated manually or whether it was powered electrically.

suffered at work. A physical exam was performed on that day by Doctor S. Said exam revealed that plaintiff was "[i]n considerable distress, that her [s]traight leg raising was restricted to 20 degrees" and that "[a]ll reflexes were present and equal." An x-ray of the lumbosacral spine was normal. Plaintiff was placed in traction and given muscle relaxants. She responded to such treatment slowly though not dramatically. Plaintiff was discharged May 1, 1976 although not completely better. Doctor S's final diagnosis was "[l]umbar disc syndrome—to be followed as an Out Patient."

The hospital's records further show that plaintiff was readmitted June 17, 1976 per the referral of Doctor S. Thereupon plaintiff was examined by Doctor R, a neurologist. Plaintiff indicated that after release from the hospital May 1, 1976 the pain in her lower back radiated into her left leg and foot. Doctor R's examination revealed that plaintiff was in no particular distress but that there was diffuse tenderness over the lumbosacral spine. His examination also showed that plaintiff's straight leg raising was to 85° on the left and was negative on the right and that she could bend forward to the point where her fingertips went below her knees. There was no motor weakness, no muscle atrophy, no reflex abnormalities and no sensory defects. A lumbar myelogram was performed on June 18, 1976 and revealed no abnormalities. A pyelogram also was performed which revealed a cystocele. Plaintiff was fitted with a "camp corset" and instructed to continue her "William's exercises." She was discharged June 26, 1976 in an improved condition without medication. Doctor R's final diagnosis was lumbosacral strain and cystocele. He further opined: "From a neurosurgical point of view, she should be able to return to work in about two weeks." However, Doctor R noted that, if plaintiff continued to complain of symptoms, she should be evaluated by an orthopedic surgeon and that he advised plaintiff to return to Doctor S for further treatment.

In a note dated September 28, 1976, Doctor S stated that plaintiff is totally disabled from her back trouble. In confirmation of a telephone call to the state agency, Doctor S provided a report dated October 15, 1976 wherein he stated that he had been treating plaintiff since April 1976 and that his diagnosis was a lumbar disc syndrome. He further stated that x-rays and myelographic results were normal, that a neurological consultation proved essentially negative as well and that straight leg raises were to 40° bilaterally. Doctor S reported that there was no improvement in plaintiff's condition with exercises or with prosthesis and that her limitation of motion was primarily due to pain.

Doctor A's April 26, 1977 medical report indicated *inter alia* that plaintiff's straight leg raising was 50% of normal bilaterally, that her sensory and vasculature examinations were normal, that the motion of her knees and ankles were within normal limits with no crepitations and that her hip joint motion was full with no crepitations but that she experienced tenderness over the right hip comparable with bursitis of the trochanter majora. Doctor A noted that a back examination revealed minor tenderness over L5, S1 and pronounced tenderness over paraspinal musculature between L3–L5 on the right. He stated that flexion was 80% of normal, that extension was 60% of normal, that right and left lateral bending were both 80% of normal and that torsion was 80% of normal. He further noted that plaintiff's neck motion was full with no complaints and that her upper extremity joints, muscles and motion were all normal. Doctor A's findings were (1) fibramyositis L3, 5 and (2) bursitis of the right hip with possible minor osteoarthritis. An attached x-ray report of plaintiff's lumbar spine showed no evidence of any fracture or dislocation, though a mild degree of osteodegenerative changes were noted. Intervertebral disc spaces were preserved and there was no evidence of spondylolisthesis or spondylolysis. In an evaluation of plaintiff's musculoskeletal system Doctor A stated that plaintiff's ability to walk, stand and sit was 50% limited for an average woman of her age, that plaintiff should avoid lifting and

bending and that she had no limitations on her ability to grasp and manipulate.

Doctor A reexamined plaintiff May 5, 1978 upon the request of the state agency. In a letter to the state agency dated May 7, 1978, he stated, in part:

" * * * I did the examination step by step with my previous report to compare with from the last examination. I see no change in her condition. She still maintains that upon long standing she gets shooting pains down her right calf. She also states that she gets this pain upon walking ½ to 1 mile or doing any lifting. "The complete examination does not show any change what so ever as compared to the examination in 1977. I believe that she has lumbrosacral strain with possible laxiety of ligaments aggravated by stress.

"Overall, I believe that she can not return to her previous job and she is incapacitated 25% comparing to a female of her age. * * * "

The record also contains two 1978 reports by Doctor S. In the first of such reports, dated April 10, 1978, Doctor S stated that plaintiff had a back injury, low back syndrome and chronic pain, that she had sustained a 50% loss of motion of her lumbosacral spine and that she had some low back muscle spasms. Doctor S opined that plaintiff could sit or stand for a half an hour, walk four blocks and climb two flights of stairs but that she could neither bend and kneel nor lift and carry. The second report, dated August 26, 1978, indicated that plaintiff was unable to work due to chronic pain upon movement. Doctor S stated that plaintiff had mild degenerative changes of her lumbosacral spine and he diagnosed low back syndrome. He opined that in an eight-hour day plaintiff could spend three hours of such day sitting, one hour of such day standing and one hour of such day walking. He further opined that plaintiff could not lift, carry, climb, crawl, bend, squat or reach above shoulder level and that she had mild restrictions of activities involving unprotected heights, being around moving machinery, driving automotive equipment and exposure to dust, fumes and gases.

A claimant has the burden of proving a disability which entitles her for disability insurance and/or SSI benefits based on a disability. *E. g., Bastien v. Califano,* 572 F.2d 908, 911 (2d Cir. 1978). A claimant must shoulder the same burden of persuasion when challenging a termination of benefits granted previously. *Memoli v. Califano,* 463 F.Supp. 578 (S.D.N.Y. 1978); *Marker v. Finch,* 322 F.Supp. 905, 909–10 (D.Del.1971). But once such claimant demonstrates that she remains unable to do the duties of her former job, the burden of going forward with the evidence shifts to the Secretary to show that the claimant is capable of other substantial gainful employment. *Vaughn v. Finch,* 431 F.2d 997, 999 (6th Cir. 1970).

In the instant case, the ALJ cites and presumably grounded his decision on 20 C.F.R. §§ 404.1539(a)(1) and 416.939(a)(1) which respectively authorize the Secretary to terminate disability insurance benefits and SSI benefits based on a disability where "the impairment, as established by the medical or other evidence, is *no longer* of such severity as to prevent [the claimant] from engaging in any substantial gainful activity * * *." (emphasis supplied) The impartation of sections 404.1539(a)(1) and 416.939(a)(1) is that to terminate benefits under said regulations the Secretary must find that the claimant's condition has improved after the disability was established.[2] My review of the administrative

---

**2.** I am cognizant of the United States Court of Appeals for the First Circuit's 'decision in *Miranda v. Secretary of Health, Education & Welf.,* 514 F.2d 996 (1st Cir. 1975), wherein the Court noted that the Secretary may terminate disability insurance benefits where the Secretary concludes that the claimant's condition was never really as serious as believed. The Court neither discussed 20 C.F.R. § 404.1539 nor discussed the Secretary's ability to reopen a finding of disability which he later concludes is erroneous pursuant to 20 C.F.R. § 404.957. Where, as here, the Secretary has not moved to reopen under 20 C.F.R. § 404.957, I conclude that he may not terminate benefits under the guise of 20 C.F.R. §§ 404.1539(a)(1) or 416.-

record shows that the Secretary's finding that plaintiff's disability ceased May 1978 is not supported by substantial evidence inasmuch as the record does not contain relevant evidence that a reasonable mind might consider adequate to support the conclusion that plaintiff's condition has improved since the Secretary's finding of disability.

As noted previously, the Administration's finding of disability was based on Doctor A's medical report dated April 26, 1977. His May 9, 1978 medical report clearly establishes that plaintiff's condition remained unchanged between his first examination of plaintiff April 22, 1977 and his second examination of her May 5, 1978. Moreover, Doctor S's April 10, 1978 and August 26, 1978 medical reports do not provide support for the Secretary's cessation of disability finding inasmuch as neither report indicates whether or not plaintiff's condition improved since the Administration's finding of disability. Given Doctor A's finding of no change in plaintiff's condition, had Doctor S rendered opinions in April 1977 regarding plaintiff's residual functional capacities they presumably would have been substantially similar to those he made in April 1978 and July 1978. Finally, plaintiff's testimony regarding her subjective symptomology is consistent with a finding that her condition did not improve and that she remained disabled through and after May 1978. Accordingly, I conclude that plaintiff has shown that there was no change in her condition since the Administration's finding of disability in or about May 1977. Accordingly, I find that the Secretary's finding of cessation of disability based on a change in her condition is not supported by substantial evidence.

While I need not reach any further issues, the gravity of further errors by the Secretary requires comment.

Assuming *arguendo* that the evidence had shown that plaintiff's condition had improved, the Secretary would have had the duty to determine whether plaintiff had proven that she could not return to either of her former jobs. Given plaintiff's total inability to bend or lift and her limited ability to stand and sit continuously, the only conclusion that the Secretary could have made is that plaintiff could not return to her former work as a laborer at a garment factory or as a coremaker at a foundry. The burden of proof would then have shifted to the Secretary to show via the testimony of a vocational expert what, if any, substantial gainful employment plaintiff could perform. In the instant case, the Secretary did not follow such two-step analysis but concluded that while she might not be able to return to her former job she nonetheless could perform sedentary work.

Additionally, the Secretary made no finding regarding plaintiff's credibility. Such finding is required where, as here, the plaintiff's testimony if credited shows that she remains under a disability. *See, Marcus v. Califano*, 615 F.2d 23 (2d Cir. 1979).

Finally, the ALJ does not set forth sufficiently the rationale for his conclusive and ultimate findings of fact. His decision should have contained a discussion section wherein he applied the applicable law to the evidence before him.

My usual practice, where there is no substantial evidence or where evidence is evaluated improperly, is to remand the case to the Secretary for further proceedings. Inasmuch as the evidence shows that plaintiff's condition has not changed since the Administration found her disabled and inasmuch as there is no need for the taking of further evidence, I am reversing the final decision of the Secretary without remand.

It is therefore hereby

ORDERED that the Secretary's final decision finding that plaintiff's disability ceased in May 1978 is reversed.[3]

939(a)(1) on the ground that plaintiff's condition was never so serious as first believed by the Secretary.

3. My Order herein neither prevents the Secretary from moving to reopen the Administration's finding of disability nor prevents him from reevaluating plaintiff's condition at a later date.