Gerald LAUFER, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

No. 80 CV 57 (ERN).

United States District Court, E.D. New York.

July 6, 1983.

John C. Gray, Jr., Brooklyn Legal Services Corp. B by Ruben Nazario, Brooklyn, N.Y., for plaintiff.

Raymond J. Dearie, U.S. Atty., E.D.N.Y. by Cyril Hyman, Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

## MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

This is an action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the termination of Supplemental Security Income ("SSI") benefits which plaintiff has been receiving since January 1974. Benefits had been originally awarded under the New York State standard of disability because of injuries to plaintiff's lower back and knee which prevented him from working.[1] Based upon findings of medical improvement in plaintiff's condition, his disability was considered terminated as of October 1978 with SSI benefits ending December 31, 1978.

Plaintiff timely applied for and received a *de novo* hearing on the termination of his benefits. That hearing was held before an administrative law judge (ALJ) on August 22, 1979, which plaintiff attended represented by an attorney. The hearing revealed that plaintiff was then 43 years old, 6'1" tall, weighed 231 pounds, had completed one year of college, had in the past worked as a mail carrier for the post office and later as a waiter but had not worked at all since 1964. Tr. 32–33, 66.[2]

Responding to the ALJ's questions, plaintiff testified that he has pain in the lower back but "I wouldn't call it severe," and that his knee "is always swollen," although an arthrogram and x-rays revealed nothing wrong. Tr. 37. He no longer wears a fitted corset he was given at the VA Hospital, does not use a cane, takes Darvon occasionally and aspirin once in a while but not valium, which had been prescribed for him. Tr. 34–36. He also denied having any psychological problems, admitted that he cleans his apartment in which he lives alone, does his own cooking and shopping, is able to carry 10 pounds, and spends his time taking care of himself and reading and watching TV. Tr. 36–39, 41. Occasionally he visits relatives who live two miles away and depends on friends to give him a lift because bus and subway travel "have a tremendous jarring effect on my back," although he has no "intense" difficulty with stairs or getting to the subway or the bus. Tr. 39–42.

Following the hearing, the ALJ rendered a decision based upon the testimonial and medical evidence in the record, applying the Secretary's then newly-adopted medical-vocational guidelines which became effective February 26, 1979. Regs. Nos. 4 and 16 (20 CFR 404, 416). Finding that plaintiff had suffered impairments of the back and knee which rendered him unable to perform his past relevant work as a waiter or mail carrier, the ALJ concluded that plaintiff had the residual functional capacity to perform at least sedentary work since the evidence demonstrated that he had normal ability to walk, stand, sit, bend or grasp, and pain and functional restriction were not severe. Thus, as a younger individual age 43, with more than a high school education, he was no longer disabled from performing gainful work under the Secretary's guidelines. Regs. No. 16, Subpart I, App. 2, § 201.00, Table No. 1.

In this review action plaintiff mounts a series of challenges to the Secretary's decision, which are briefly discussed *seriatim*.

■ *Lack of substantial evidence.* The evidence completely contradicts plaintiff's claim that he continues to suffer from a listed spinal disorder. The medical records of Dr. Melvin Moore, a board certified radiologist, provided to Dr. S.K. Pal, plaintiff's treating doctor, undercut Dr. Pal's clinically unsupported note that plaintiff is disabled from "vertebra" and "disc degeneration." Tr. 73. Dr. Moore's 1977 report shows that plaintiff's lumbosacral fractures

1. In January 1974 State recipients of aid to the aged, blind and disabled were converted to the federal SSI program. In order to maintain SSI eligibility, such recipients must meet the more strict definition of disability required by federal law. *See* 42 U.S.C. § 1382c(a)(3)(E).

2. References are to pages of the administrative record.

"are old and completely healed" with "intervertebral disc spaces . . . well maintained." Tr. 88. No other lumbosacral pathology was noted, including no spondylolysis or spondylolisthesis. Dr. Moore further noted no abnormality in either of plaintiff's knees, and described the resulting hump ("kyphos") in plaintiff's spine as "moderate." *Id.* The references in plaintiff's memorandum of law to the Secretary's listings of arthritic and spinal disorders do not overcome medical findings which show that plaintiff's condition has healed. And plaintiff's own testimony corroborates that he does not suffer from "severe" pain or require constant medication to relieve any pain arising from such previous impairments.

■ *Treating physician's opinion.* As already noted, Dr. Pal, whose specialty is internal medicine, in a note dated "3–22–79" stated that plaintiff's vertebra and disc "degeneration" has a "disabling effect on him." That opinion is in conflict with the clinical findings of his own radiologist and is not otherwise supported by any legible findings of his own. Certainly the detailed examination report, including x-ray findings, of the consultative expert Dr. Thomas D. Forschner, a specialist in physical medicine and rehabilitation, is to be preferred in this case. Tr. 64–68. Dr. Forschner also found no degenerative changes of arthritic origin in plaintiff's lumbosacral spine or in his right knee. *Id.* at 68. Only when "no contradictory evidence is presented" is a treating physician's expert opinion binding on the Secretary. *Eiden v. Secretary of Health, Education and Welfare,* 616 F.2d 63 (2d Cir.1980). That is clearly not the case here.

*ALJ's failure to fulfill his duty.* This contention is wholly without merit for two reasons: (1) *Eiden* has no application here because plaintiff did not appear *pro se* but was represented by an attorney at his hearing, Tr. 23; and (2) plaintiff is completely mistaken in his claim that Dr. Pal's complete records were not considered by the ALJ because they were misidentified. Pl.Br. p. 1. Dr. Moore's medical reports, including x-rays, were performed for Dr. Pal and are discussed in the ALJ's decision. Tr. 10.

*The Secretary's "wrong legal standard" and failure to sustain his burden of proof.* These contentions are also without merit. The Appeals Council had ample review authority to correct plaintiff's skills classification to "not transferable"—which favored him—in determining his residual functional capacity to undertake sedentary work. Tr. 2. And plaintiff wholly misunderstands the difference between "exertional" limitations and those of a nonexertional or "postural" type of impairment as discussed in the Secretary's medical-vocational guidelines. 20 C.F.R. §§ 404.1502–98, Subpart P, App. 2, § 200.00. "Exertional" always refers to a *physical* disability which may limit a person's ability to engage in work or certain kinds of work. Plaintiff's attempt to place himself in a "postural" category—which pertains to mental, sensory, or skin impairments—is fatuous. There is no question that on this record his claimed disability is purely physical and not nonexertional.

■ Assuming, *arguendo,* that the Secretary has the burden of coming forward with evidence that an SSI recipient is no longer disabled before finally discontinuing his benefits, that burden was clearly met here. There can be no doubt that it was the Secretary, acting through the Social Security Administration, who generated the evidence produced at the *de novo* hearing. That hearing satisfied the due process requirements prescribed in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and, as noted above, substantially established that plaintiff was not disabled from performing sedentary work. Moreover, plaintiff was not actually left without means of support, since he elected to continue receiving benefits pending the outcome of his hearing. Finally, there is dicta in this circuit that the burden does not shift to the Secretary in termination cases. *Magee v. Califano,* 494 F.Supp. 162, 166 (W.D.N.Y.1980); *Memoli v. Califano,* 463 F.Supp. 578, 582 (S.D.N.Y.1978).

Since there is substantial evidence supporting the termination of benefits, the Secretary's decision is affirmed.

SO ORDERED.