**Albina MEMOLI, Plaintiff,**

v.

**Joseph CALIFANO, Secretary, Department of Health, Education and Welfare, Defendant.**

No. 77 Civ. 2987 (RLC).

United States District Court,
S. D. New York.

Dec. 21, 1978.

Marc L. Ames, New York City, for plaintiff.

Robert B. Fiske, Jr., U. S. Atty., for the Southern District of New York, New York City by Thomas H. Belote, Asst. U. S. Atty., New York City, for defendant.

ROBERT L. CARTER, District Judge.

## OPINION

■ This case involves a denial of social security disability benefits. Both parties have moved pursuant to Rule 12(c), F.R. Civ.P., for a judgment on the pleadings, the plaintiff demanding that the court order an award of the requested benefits, and the government seeking dismissal of the complaint. The question presented is whether the Secretary of Health, Education and Welfare, without the support of qualified medical evidence or opinion, may disregard medical proof presented by a claimant in the process of determining when a disability has terminated. We hold that he may not, since such a determination is not founded on substantial evidence. Judgment is therefore entered for the plaintiff, and this claim is remanded to the Secretary of Health, Education and Welfare for further proceedings.

*Background*

The plaintiff, Albina Memoli, is a 54 year-old emigrant from Italy with a ninth grade education. Prior to becoming disabled she had worked exclusively as a sewing machine operator. On May 30, 1975, she left her job when her physician advised her to enter the hospital for surgery. On July 12, 1975, plaintiff underwent an exploratory operation, which was followed by a total hysterectomy and removal of both ovaries when cancer was discovered. She then received radiation therapy to the abdomen and pelvis from July 15 until August 15, 1975.

The Department of Health, Education and Welfare ("Department") rejected Me-

moli's initial claim for disability benefits on September 25, 1975, and it denied reconsideration of that decision on February 19, 1976. Plaintiff then applied for a hearing, but she waived her right to appear and requested a decision based upon the information in the record. The evidence before the Administrative Law Judge ("ALJ") at that time consisted of a report from the chief of radiotherapy at Misericordia Hospital where plaintiff was treated, three reports by her attending physician, Dr. George Muscillo, and plaintiff's subjective statements regarding her pain and disability. The report from Misericordia primarily sets forth the details of plaintiff's diagnosis and treatment and refers her back to Dr. Muscillo for further care.[1] It also indicates that she suffered symptoms of nausea and incontinence as a result of the radiation therapy. Dr. Muscillo's first report is a Social Security questionnaire dated September 2, 1975.[2] There, he indicated that there had been no metastasis, but he recorded his prognosis as: "guarded—recurrence is entirely possible, however." He also reported that a chest X-ray and electrocardiogram appeared normal. In a note dated January 14, 1976, Dr. Muscillo indicated that his patient had complained of backache and urinary frequency.[3] Finally, plaintiff submitted a report dated September 1, 1976, in which Dr. Muscillo stated that he had examined her in January, 1976, and found that there was a possible recurrence of her tumor, although the X-rays were not conclusive of skeletal metastasis.[4] He also observed that she was suffering from a severe lumbosacral sprain, but he characterized his patient's response to treatment as excellent.

In addition to this medical evidence the record contained subjective statements by plaintiff describing her symptoms. In a report to the Social Security Administration filed on August 12, 1975, Memoli reported that her condition limited her ability to do housework, and she noted that her doctor had instructed her to avoid doing any strenuous lifting and to get complete rest.[5] She further indicated that the surgery and subsequent radiation treatments left her very weak, thus preventing her from resuming her previous employment.[6] In requesting reconsideration of her application on February 3, 1976, Memoli stated that her condition had not improved, that she had developed an inflammation of her spine, and that she was unable to work.[7] In her request for a hearing, plaintiff again stated that she was unable to work.[8]

In the opinion that the ALJ issued on September 8, 1976, he first summarized the evidence submitted by the plaintiff.[9] He then stated: [10]

"Pertinent here is an excerpt from the classic work *Understanding Surgery* by *Robert E. Rothenberg, M.D., F.A.C.S.:* 'Surgery of the Female Reproductive System.

Question: How soon after ovarian operations can one:
Resume household duties? . . . . . . 3 weeks;
Drive a car? . . . . . . 6 weeks;
Return to work? . . . . . . 6 weeks.'"

The ALJ went on to remark that, "[a]lthough physical defects may cause limitation of functional activity, it does not follow that it results in a complete limitation of industrial usefulness."[11] He concluded that the plaintiff's disability commenced on June 1, 1975 and ended as of May 31, 1976.

Plaintiff requested review of this decision by the Appeals Council on the grounds that

1. Certified Record of proceedings before the Department of Health, Education and Welfare [hereinafter CR] at 26.

2. CR at 27–28.

3. CR at 29.

4. CR at 30–33.

5. CR at 37.

6. CR at 38.

7. CR at 21.

8. CR at 23.

9. CR at 11–13.

10. CR at 13.

11. CR at 13–14.

she continued to be disabled, and she submitted two additional items of medical evidence. The first was a letter from Dr. Muscillo describing conclusions that he had reached as a result of an examination of the patient on September 8, 1976.[12] He stated that Memoli's complaints included urinary frequency, weakness, backache, and anxiety. Her blood count showed mild anemia, but her X-rays were essentially negative. Dr. Muscillo concluded:

"Although there is no positive evidence of recurrence of tumor, this can't be entirely ruled out because of her symptoms.

She will also see a psychiatrist soon. In view of the above, it would be difficult for her to maintain work at this time."

The second supplementary letter was written by Dr. Zach Shaye, a psychiatrist who examined Memoli on December 1, 1976.[13] He determined that:

"This patient is suffering from a psychoneurotic disorder secondary to her physical illness, which renders her unsuitable for gainful employment. This condition can be expected to continue indeterminately."

In addition, plaintiff submitted to the Appeals Council an affidavit in which she indicated that she was still weak, that she was depressed because of the possibility that the cancer would recur, and that she suffered from urinary frequency that disrupted her sleep.[14]

On May 16, 1977, the Appeals Council affirmed the decision of the ALJ defining the disability period, and this opinion thus became the final determination of the Secretary of Health, Education and Welfare ("Secretary"). Plaintiff then filed the instant lawsuit pursuant to 42 U.S.C. § 405(g), arguing that the Secretary's decision is not based on substantial evidence and that it is tainted by the ALJ's reference to incompetent evidence obtained from outside the record.

*Discussion*

■ The Social Security Act defines a disability as:

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. § 423(d)(1)(A). It is the claimant's responsibility to demonstrate disability in order to qualify for assistance. *Bastien v. Califano,* 572 F.2d 908, 911 (2d Cir. 1978); *Cutler v. Weinberger,* 516 F.2d 1282, 1286–87 (2d Cir. 1975); *Lupinacci v. Mathews,* 433 F.Supp. 47, 50 (S.D.N.Y.1977) (Bonsal, J.); *Hofacker v. Weinberger,* 382 F.Supp. 572, 575 (S.D.N.Y.1974) (Carter, J.). Moreover, a plaintiff must shoulder the same burden even when appealing a termination of benefits previously granted. *Marker v. Finch,* 322 F.Supp. 905, 909–10 (D.Del.1971). Thus, the court recognizes the high hurdle that the plaintiff must surpass in the instant case.

■ Nevertheless, the court need not sustain a denial or termination of benefits where the claimant has raised a substantial claim and no evidentiary basis exists for rejecting it. *Kerner v. Flemming,* 283 F.2d 916, 922 (2d Cir. 1960); *Hofacker v. Weinberger, supra,* at 576 (Secretary's determination may be overridden "if reliance is placed on one portion of the record in disregard of overbalancing evidence to the contrary"). The district court's scope of review can be expressed in two related rules. First, it is the responsibility of the Secretary and not the court to weigh conflicting evidence, including inconsistent medical

---

**12.** CR at 53.

**13.** CR at 54.

**14.** This affidavit, a copy of which was appended to Plaintiff's Memorandum of Law in this case, does not appear in the Certified Record, although it was apparently sent to the Appeals Council. Because the Appeals Council evidently did not consider this document in its initial decision affirming the ALJ's opinion, plaintiff's attorney requested that the Council reconsider the appeal. In a letter dated December 22, 1977, the Council notified plaintiff that this request was denied.

evaluations. *Hofacker v. Weinberger, supra,* at 576. Second, the Secretary's determination must be sustained if it is supported by substantial evidence. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Bastien v. Califano, supra,* at 912; *Gold v. Sec'y of H.E.W.,* 463 F.2d 38, 41 (2d Cir. 1972). The substantial evidence standard requires that the Secretary's decision be founded on more than a mere scintilla of evidence. Rather, it must be based on relevant evidence that a reasonable mind might consider adequate to support the conclusion. *Richardson v. Perales, supra,* at 401, 91 S.Ct. 1420; *Bastien v. Califano, supra,* at 912. In the instant case, the Secretary's decision does not meet this standard.

▮ Plaintiff attacks the decision of the ALJ in part because it was based on information outside the record that plaintiff characterizes as prejudicial. The court need not decide whether the ALJ's reliance on evidence which the claimant had no opportunity to refute would in itself be cause to reverse the denial of benefits.[15] In the circumstances of this case, the ALJ's citation to a medical reference for the layman indicates that he misunderstood either the nature of Memoli's claimed disability or the applicable legal standards or both.

▮ Plaintiff's evidence amply demonstrates that she had undergone a total hysterectomy and subsequent radiotherapy for ovarian cancer. Yet the ALJ's opinion refers to the expected term of convalescence for surgery apparently unrelated to cancer. Thus, there is some basis for believing that the ALJ misapprehended the very character of Memoli's infirmity. Furthermore, even if he understood the nature of plaintiff's disability, the ALJ erroneously considered evidence pertaining to a hypothetical average individual. In order to support a denial or termination of benefits, individualized evidence showing that the claimant is not disabled must be present on the record. *Franklin v. Sec'y of H.E.W.,* 393 F.2d 640, 642 (2d Cir. 1968); *Dillon v. Celebrezze,* 345 F.2d 753, 757 (4th Cir. 1965). Thus, in *Taylor v. Weinberger,* 512 F.2d 664, 668 (4th Cir. 1975), the court held that an ALJ could not take notice of the "complex and disputed" fact that the claimant had the vocational capacity to perform certain jobs, as such a procedure would "undermine an explicit congressional direction to adjudicate disability claims on an individual case-by-case basis." This reasoning applies with even greater force in the context of the present case where medical questions underlying the issue of whether a disability exists are subject to expert testimony about the health of a particular individual.

The ALJ's determination, then, was suspect. He had before him sufficient evidence to conclude that the plaintiff became disabled on June 1, 1975. If in reviewing the record the ALJ did not feel that he had adequate information to determine how long Memoli continued to be disabled, he

---

**15.** The Secretary of Health, Education and Welfare is required by law to afford a hearing to any applicant for disability benefits who requests one, and the Secretary must make his decision based on the evidence that is presented there. 42 U.S.C. § 405(b). Evidence presented subsequent to the hearing may not be considered without affording the claimant an opportunity to present rebuttal evidence. *Lonzollo v. Weinberger,* 534 F.2d 712, 714 (7th Cir. 1976). The wisdom of this rule is evident in the context of the instant case. Here the duration of claimant's disability was the key issue in dispute between the parties, and its resolution hinged on the claimant's individual characteristics. Thus, it was particularly inappropriate for the ALJ to take official notice of information related to this question. *See* 2 K. Davis, Administrative Law Treatise § 15.10 (1958) ("When the facts are (1) adjudicative, (2) disputed, and (3) critical, nothing less than submission through the evidence, subject to cross-examination and rebuttal, will normally suffice.").

The Department contends that the plaintiff is precluded from advancing this argument because she failed to object to the ALJ's utilization of material outside the record at the time her claim was reviewed by the Appeals Council. However, in a letter dated December 13, 1976, that accompanied the additional exhibits that plaintiff submitted to the Appeals Council, her attorney strenuously objected to the ALJ's quotation from a text that was not in evidence. Thus, the plaintiff has in no way waived her right to contest this aspect of the ALJ's decision.

could have directed that the claimant submit to a medical examination at the government's expense. 20 C.F.R. § 404.1527. On the basis of such an examination, the ALJ might rationally have concluded that Memoli's disability had subsided as of a certain date. But the ALJ did not seek such expert medical evidence. Instead, he chose to go outside the framework of the hearing and seek guidance from a public reference book that bore little relation to the claimant's individual disability. The evidence obtained in this manner was not competent, and the fact that the ALJ felt compelled to seek it indicates that there was uncertainty about the basis for terminating benefits.

The Appeals Council compounded this error. When it grants review, the Appeals Council must review the entire record, including evidence submitted subsequent to the decision of the ALJ. 20 C.F.R. § 404.947a. In this case Memoli provided three additional submissions: her own affidavit setting forth her subjective complaints, a letter from her physician, and the report of a psychiatrist who examined her. In her affidavit, Memoli described her current symptoms, and she asserted that they rendered her unable to work. Although hardly conclusive, the affidavit is entitled to some consideration. Because disease and injury affect different individuals in diverse ways, subjective evidence of pain and incapacity are important, even though some clinically-identifiable basis for the symptoms must be demonstrated. *Cutler v. Weinberger, supra,* at 1286–87; *Denton v. Weinberger,* 412 F.Supp. 450, 453 (S.D.N.Y. 1976) (Weinfeld, J.). In the instant case, the plaintiff had already submitted ample evidence documenting the medical origin of her disability.

Regardless of the weight accorded to plaintiff's subjective symptoms, the newly submitted medical reports should have governed the determination of the Appeals Council. Both reports were based on examinations of the plaintiff that had taken place subsequent to the ALJ's decision, but each was concerned with symptoms relating to the original disability. Both reports concluded that these symptoms affected Memoli's ability to hold a job. The treating physician concluded that "it would be difficult for her to maintain work at this time", while the psychiatrist determined that her condition "render[ed] her unsuitable for gainful employment." No contrary evaluation of the plaintiff's condition was present in the record. Thus, this is not merely a case where the Secretary chose among conflicting medical determinations. *Cf. Richardson v. Perales, supra,* at 392–93, 91 S.Ct. 1420; *Reyes Robles v. Finch,* 409 F.2d 84, 87 n.4 (1st Cir. 1969); *Hofacker v. Weinberger, supra,* at 575.

It is true that the Secretary is not inextricably bound by one physician's ultimate conclusion of disability. *Id.* at 576. But, "[t]he expert opinions of a treating physician as to the existence of a disability are binding on the factfinder *unless contradicted by substantial evidence to the contrary.*" *Bastien v. Califano, supra,* at 912 (emphasis added). No contrary expert evidence has been presented here. The Appeals Council, like the ALJ, is powerless to render a decision that ignores expert evidence presented on behalf of the claimant, and therefore it should have exercised its prerogative to remand this case to the hearing officer so that additional evidence regarding the duration of the disability could be received. 20 C.F.R. § 404.950. This would have been the proper method of manifesting the Department's duty to explore all of the relevant facts concerning a disability claim. *Cutler v. Weinberger, supra,* at 1286; *Gold v. Sec'y of H.E.W., supra,* at 43; *Lupinacci v. Mathews, supra,* at 50.

For the foregoing reasons, this court will now remand Memoli's claim for further proceedings before a new administrative law judge. Remand is more appropriate than outright reversal in this case because the issue is not simply the existence of a disability, but its tenure. *See Bastien v. Califano, supra,* at 913. The claimant has established a prima facie case of entitlement to benefits through the date of the psychiatrist's examination on December 1,

1976.[16] Additional evidence may now be taken to establish the date on which Memoli again became employable if, in fact, her disability has abated.

IT IS SO ORDERED.

**16.** The Department is, of course, entitled to submit evidence showing that the claimant's condition had sufficiently improved prior to December 1, 1976, so that her disability had ended as of some earlier date. However, the expert medical reports now contained in the record are based on examinations that took place during the period of claimed disability, and it will be difficult at this point in time to produce proof contradicting these contemporaneous evaluations.