Ann CULLINANE, Plaintiff-Appellant,

v.

SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES OF the UNITED STATES, Defendant-Appellee.

No. 643, Docket 83–6136.

United States Court of Appeals, Second Circuit.

Argued Jan. 11, 1984.

Decided Feb. 15, 1984.

Iris Greidinger, Rego Park, N.Y., for plaintiff-appellant.

Raymond J. Dearie, U.S. Atty., E.D.N.Y., Brooklyn, N.Y. (Miles M. Tepper, Kathleen A. Haggerty, Asst. U.S. Attys., Brooklyn, N.Y., of counsel), for defendant-appellee.

Before KAUFMAN, OAKES, and CARDAMONE, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

An Administrative Law Judge (hereinafter "ALJ") has an affirmative duty to ensure that pro se disability insurance benefit claimants receive full and fair hearings. *Gold v. Secretary of Health, Education & Welfare,* 463 F.2d 38 (2d Cir.1972). We are presented here with a case in which an ALJ failed to heed appellant's objections to the judge's reliance on a letter written by an oral surgeon against whom she had filed a malpractice suit. Because this claimant had the right, at the very least, to be informed of her opportunity to cross-examine the oral surgeon before his adverse and possibly biased medical report was given full credence, we reverse and remand for further proceedings.

This case comes to us with a complicated procedural and evidentiary history. We set forth only those facts having immediate

bearing on this appeal. Ann Cullinane left her job as a high school secretary on December 21, 1979 to begin a series of necessary surgeries to repair severe atrophied upper and lower jaws and an alveolar teethridge. She had been afflicted for years with a variety of symptoms, including chronic malnutrition because of difficulty in chewing and swallowing and a "psychologically stigmatizing" appearance, as a result of her severe facial impairments. Cullinane believed, and her oral surgeon so confirmed in writing, that the operations and post-operative rehabilitation would last twelve to eighteen months.

In February, 1980, following surgery which included multiple bone grafts, appellant applied for and was denied disability benefits. An ALJ heard the case de novo in August, 1980. He determined that Cullinane was then and would be disabled for the period between January 4, 1980 and the end of December, 1980. The Appeals Council, however, remanded to the ALJ because, *inter alia,* there was a lack of substantial evidence for the anticipated date of cessation of disability. It was decided, therefore, that the appellant had not established the mandatory minimum twelve month disability period under the Social Security Act, 42 U.S.C. § 416(i).

After two additional operations, but before her case was reheard, Cullinane developed severe complications. Infectious sinusitis resulted, requiring the extraction of mucous from her nose each half hour. She also suffered from low-grade fevers and pain from a wire-mesh crib in her jaw which her oral surgeon, Dr. Norman Cranin, D.D.S., had implanted and which later had to be removed because it was about to pierce her skin. In addition, Cullinane experienced pulmonary problems and further physical disfigurement including hair loss, a facial tic, periodic uncontrollable drooling, and a generally grotesque appearance. She saw a psychiatrist for approximately six weeks because of intense depression and anxiety resulting from her disfiguring physical condition. She then continued regular visits to her family physician, Dr. K.V. Rao, who reported that his appointments

with her seemed to provide needed emotional reassurance until she completed surgical repairs on her face and recovered from the many troublesome symptoms.

The appellant underwent two more outpatient procedures by Dr. Cranin which, according to her testimony, included treatments to alleviate some of her complications. In two separate reports, dated October 16 and October 18, 1980, respectively, her oral surgeon stated that Cullinane was disabled by a "progressive series of operations." He also predicted that she would be able to return to work no sooner than January 15, 1981. Two and one half weeks later, on November 6, 1980, Dr. Cranin wrote a letter which stood in stark contrast to his earlier prognoses. He advised "To Whom It May Concern" that Ann Cullinane was completely rehabilitated, and stated there was "no reason for her not to be able to return to her former position, duties and responsibilities."

In early November, 1980, Ann Cullinane filed a malpractice suit against Dr. Cranin. The following February she returned to her job at the high school. Cullinane testified that she was no longer severely incapacitated because she had obtained a temporary denture and because her medication was finally controlling the sinusitis symptoms more effectively. She had also gathered more information from outside medical consultants and made arrangements to repair the continuing serious problems affecting her jaw. In addition, the school had modified her hours and her tasks, reducing her contact with students and public, in accord with her ongoing physical impairments and her desire to resume employment.

Cullinane's next disability hearing, in May, 1981, was conducted by the same ALJ who had earlier been reversed after awarding her benefits. He repeatedly emphasized the necessity for her to give reasons for her inability to return to work before February, 1981, particularly in light of Dr. Cranin's letter of November 6, 1980. When appellant, who appeared pro se, objected to his reliance upon Dr. Cranin's evidence be-

cause Dr. Cranin was aware of her impending malpractice suit against him, the ALJ stated, "I have a letter here from your treating physician, whether you're suing or not . . . doesn't matter." In his October 20, 1981 decision denying benefits to Cullinane, the ALJ placed heavy reliance upon the fact that "her own physician states in November, 1980 that her dental rehabilitation had been completed". He did not credit the conflicting evidence by a Dr. Saglimbene who believed Cullinane was not rehabilitated or mention the earlier, contradictory statements by Dr. Cranin.

The appellant then sought judicial review in the Eastern District of New York, pursuant to the Social Security Act, 42 U.S.C. § 405(g). Judge Platt, in an oral decision, stated the record contained substantial evidence in support of the ALJ's findings. He therefore granted judgment on the pleadings to the Secretary of Health and Human Services, and dismissed the complaint. This appeal followed.

Appellant Cullinane, now represented by counsel, urges that the ALJ erred in relying on the written report of an oral surgeon whose work had allegedly resulted in severe complications and against whom she had filed a malpractice action. At a minimum, she argues the ALJ should have either subpoenaed the doctor or advised her that she had a right to confront him concerning the contradictory and possibly biased nature of his evidence. We agree.

 An ALJ has an affirmative duty to assist a pro se claimant and " 'to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.' " *Echevarria v. Secretary of Health and Human Services,* 685 F.2d 751, 755 (2d Cir.1982), citing *Hankerson v. Harris,* 636 F.2d 893, 895 (2d Cir.1980). A reviewing court is charged with the responsibility of ensuring the evidence is both "developed and considered." *Id.*

 The ALJ in this case did attempt to assist Cullinane by permitting her to submit additional documentary evidence of her medical condition before he made his final decision. He failed, however, to pursue her assertion that Dr. Cranin's report was unreliable or to question Dr. Cranin concerning the contradiction between the November 6th prognosis and the two reports filed in October, 1980. In addition, the ALJ neglected to instruct the appellant that she had the right to subpoena and cross-examine a treating physician whose documentary evidence had been called into question. As a result, the evidence concerning the "quality and trustworthiness" of the challenged oral surgeon was never sufficiently developed. *See Fernandez v. Schweiker,* 650 F.2d 5, 8 (2d Cir.1981).

It can hardly be questioned that a report submitted by a witness whose self-interest may well have dictated its contents cannot and should not be permitted to constitute substantial evidence. The ALJ's refusal to consider the possibility that Dr. Cranin's letter was biased therefore deprived appellant Ann Cullinane of the full and fair hearing required by law. *Echevarria v. Secretary of Health and Human Services, supra.*

Appellant, with the help of her attorney, has gathered additional evidence including statements from two physicians that she was disabled and a deposition of Dr. Cranin taken in the malpractice action. At a new hearing these documents could be introduced and Cullinane could, should she so choose, seek the appearance of Dr. Cranin so that she may have an opportunity to confront him.

Accordingly, the judgment is reversed and the case remanded for further proceedings.