Ana **HERNANDEZ**, Plaintiff,

v.

Margaret M. **HECKLER**, Secretary of Health and Human Services, Defendant.

No. 83 Civ. 5500 (MP).

United States District Court, S.D. New York.

April 24, 1984.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Jonathan Lindsey, Annette H. Blum, Barbara L. Spivak, New York City, for defendant.

Robert & Schneider, Hempstead, N.Y. by Ira S. Schneider, Steven Lerner, New York City, for plaintiff.

## OPINION AND ORDER

MILTON POLLACK, Senior District Judge.

Plaintiff Ana Hernandez commenced this action, pursuant to the Social Security Act, 42 U.S.C. § 405, to obtain judicial review of a final decision by the Secretary of the Department of Health and Human Services, which determined that under the provisions of the Act and the regulations thereunder the plaintiff's disability and entitlement to disability insurance benefits had ceased in May, 1981.

The parties have submitted cross motions for judgment on the pleadings pursuant to

Fed.R.Civ.P. 12(c). For the reasons appearing hereafter, plaintiff's motion will be granted and the decision of the Secretary will be reversed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was born August 19, 1958 and completed eleven years of school in the Dominican Republic. Her ability to communicate in English is limited. In the past she was employed full-time as a sample maker and seamstress, but she has engaged in no work since July 1979.

On July 4, 1979 plaintiff fell to the ground from a second-story window. She sustained multiple serious injuries, including fractures of two vertebrae of her dorsal spine, fractures of both ankles, and a fracture of the left femur. She was hospitalized from the time of the fall until the middle of November 1979, a total of nearly four and one-half months, and continued in out-patient therapy and treatment at least through February 1980. In addition, plaintiff has continued to see physicians at least twice a month through the time of the administrative hearing.

On April 6, 1982, the Social Security Administration ("SSA") notified plaintiff that it had determined that she had become able to do substantial gainful work in May 1981, and that her entitlement to disability benefits had therefore ceased in July 1981.

Plaintiff requested, and there was held on September 28, 1982, a *de novo* hearing before an Administrative Law Judge to review this determination. Plaintiff was unrepresented at the very brief hearing, and was the only person to testify. At the direction of the ALJ, plaintiff was subjected to consultative orthopedic and neurological examinations conducted in November 1982 by physicians designated by SSA, and the reports of these physicians were made part of the administrative record before the ALJ.

On December 27, 1982, the ALJ issued a decision which found that plaintiff's disability had ceased in May 1981. The SSA Appeals Council declined to review this determination, and it thereby became the final decision of the Secretary.

A transcript of the hearing, the documentary evidence contained in the administrative record, and the decision of the ALJ have been placed before the Court by way of the Secretary's answer.

Plaintiff testified at the ALJ hearing that she wears a back brace due to her injuries; that pain and stiffness make it impossible to sit for more than one hour and that otherwise she must lie flat on her back; that it is impossible for her to stand for more than five or ten minutes; and that she is unable to walk for more than one block. She further testified that due to her condition a home attendant comes to her house five days a week to perform household chores and take care of her children, and that family and friends cook for her on weekends.

The documentary evidence consisted of the following. First, a musculoskeletal medical report, dated July 14, 1980, prepared by a physician who had examined and treated plaintiff, found that she had a 90 percent loss of all bending functions of the back and a 40 to 60 percent loss of all motions of both ankles, that during an eight-hour work day she could sit and walk for at most fifteen minutes each and could stand for zero hours, and that she could never lift or carry objects having a weight of ten or more pounds. This report concluded that plaintiff has a "permanent total disability."

Second, a report of a consultative examination conducted at SSA's request on May 27, 1981, found that plaintiff walks "with an antalgic gait using a cane" and that she has a "paraspinal muscle spasm." This report noted that plaintiff's pregnancy and the impossibility of conducting an x-ray examination of her back prevented a "thorough evaluation of her spine." Nevertheless, the doctor who wrote this report concluded that plaintiff could sit for four hours; stand and walk for two hours each; occasionally lift up to twenty pounds; nev-

er bend, crawl or climb; and occasionally squat.

Third, two letters from The Presbyterian Hospital in the City of New York, dated June 17, 1981 and September 27, 1982, respectively, indicated that plaintiff was then under the regular treatment of doctors at that hospital and stated that "this patient is still disabled as a result of her accident and will require further surgery" and that "she is unable to work at this time."

Fourth, a consultative report of an examination by an orthopedic surgeon, prepared at the request of the ALJ to supplement the record and dated November 18, 1982, stated that x-rays of the dorsal spine reveal a "severe compression fracture" with "marked anterior wedging", and that an examination reveals "spreading of the heels". The physician who wrote this report concluded:

> Based upon history, physical examination and x-ray findings, this patient has a very limited capacity for walking, though she should be able to walk in the vicinity of three blocks, if she does so slowly. Her standing capacity would be 15–30 minutes. Sitting capacity should be 1 hour as described. Lifting and carrying capacity is reduced with a limit between 5 and 10 pounds. Bending would be difficult.

Fifth, a consultative report of a neurological examination of plaintiff, also prepared at the request of the ALJ and dated November 24, 1982, concluded that "there is no evidence of any neurological dysfunction in this patient." The report notes that plaintiff "is receiving physiotherapy at the Presbyterian Hospital at the current time", and as an obvious indication of the limited nature of the examination on which it was based, stated:

> I would strongly suggest [ ] that you [the agency] contact the Presbyterian Hospital for the results of their updated testing including x-rays.[1]

Nevertheless, the physician who conducted this neurological examination offered the

following conclusions with respect to plaintiff's ability to work: "no limitation" for sitting, a forty-five minute limitation for standing, a thirty minute limitation for walking, and a fifteen pound limit for lifting and carrying.

## II. THE SECRETARY'S DECISION PROCESS

Where it has been determined that an individual once was under a disability, the Secretary may suspend the payment of disability benefits if she finds that the disability has ceased. 42 U.S.C. § 425. A "disability" must be found to have ceased when current evidence shows that the individual's impairment is no longer of such severity as to prevent him from engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1594, 416.994.

The regulations promulgated by the Secretary under which a claim of continuing disability is to be determined require a five-step evaluation process, as described by the Second Circuit:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable

---

1. The record indicates that SSA failed to follow-up on this suggestion.

to perform his past work, the Secretary then determines whether there is other work which the plaintiff could perform.... [T]he claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

*Berry v. Schweiker*, 675· F.2d 464, 467 (2d Cir.1982).

Following this step-by-step analysis, the ALJ found that plaintiff has not engaged in substantial gainful activity since the time of her fall, that she has a "severe impairment" because her "ability to perform such basic work activities as standing, lifting and carrying is significantly restricted," but that her impairment is *not* one "listed" in the regulations. With respect to the fourth step, the ALJ explicitly found that plaintiff is "precluded from returning to her past relevant work as a sample maker."

The ALJ therefore reached the final step of the inquiry—the one on which the Secretary bears the burden of proof—and concluded that the evidence in the record established that claimant has the residual functional capacity for sedentary work as defined in the regulations, 20 C.F.R. §§ 404.1567(a) and 416.967(a).

In reaching this determination the ALJ stated that she "accord[ed] no probative weight to [the] unsupported opinions" that plaintiff is disabled which were expressed in the letters from Presbyterian Hospital and found that "[t]he claimant's allegation of severe and incapacitating pain is not credible in view of the medical findings."

Under SSA's "grid" formula for determining disability on the basis of age, educational background, work experience, and residual functional capacity, 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ's determination that plaintiff can perform "sedentary" work led to the conclusion that she is not disabled.

## III. DISCUSSION

The sole question presented by this action is whether there was substantial evidence in the administrative record which was before the ALJ at the time of her decision to support the finding that plaintiff has a residual functional capacity for "sedentary" work. Plaintiff contends that there was no such support, and that therefore under the regulations the Secretary's decision must be overturned.

Under the established standard for judicial review of a non-disability decision by the Secretary, the Secretary's decision that plaintiff has not been disabled since May 1981 must be sustained if it is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

■ The substantial evidence standard requires that the Secretary's decision be founded on "more than a mere scintilla" of evidence and that it be based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson, supra*, 402 U.S. at 401, 91 S.Ct. at 1427. *See also Rivers v. Heckler*, 577 F.Supp. 766, 770 (S.D.N.Y. 1984); *Memoli v. Califano*, 463 F.Supp. 578, 582 (S.D.N.Y.1978).

■ The Secretary's determination may be overridden "if reliance is placed on one portion of the record in disregard of overbalancing evidence to the contrary." *Id.* at 582. *See also Weber v. Harris*, 640 F.2d 176, 178 (8th Cir.1981) ("the substantiality of evidence must take into account whatever in the record fairly detracts from its weight."); *Rivers, supra*, 577 F.Supp. at 770.

The critical regulation under which the ALJ's determination of non-disability must be scrutinized is 20 C.F.R. § 404.1567(a), which defines "sedentary" work as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of .

walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

The Court of Appeals for the Second Circuit recently elaborated on the definition of "sedentary" work, stating, not surprisingly, that the term "contemplates substantial sitting." *Ferraris v. Heckler*, 728 F.2d 582 at 1853, 1863 (2d Cir.1984). In this regard, the *Ferraris* court pointed to authorities which have indicated that "sedentary" work requires a capability of sitting for six hours during an eight-hour work day.[2]

■ The only evidence in the record which supports the finding that plaintiff is able to sit during an eight-hour day for more than four hours is the consultative report of the November 1982 neurological examination of plaintiff, which stated without explanation that there is "no limitation" upon plaintiff's capacity to sit.

All other evidence in the record was sharply to the contrary: the orthopedic surgeon who examined plaintiff within a matter of days of the neurological examination and who had the benefit of x-rays of plaintiff's back, legs, and ankles, found that her sitting capacity was one hour; the report of the May 1981 consultative examination, which was performed without the benefit of x-rays, found that plaintiff could sit for four hours; the July 1980 musculoskeletal medical report found she could sit for at most fifteen minutes; plaintiff testified that she could sit for at most one hour.

Given the indicia of incompleteness and unreliability of the neurological examination—expressed by the examiner's statement that "I would strongly suggest that

you contact the Presbyterian Hospital for the results of their updated testing including X-rays"—it is difficult to perceive why the ALJ decided, in the face of overwhelming evidence to the contrary, to adopt the neurological report's conclusion that plaintiff can sit without limitation. On this state of the record, it cannot be concluded that there is substantial evidence that plaintiff can perform sedentary work. *Memoli, supra,* 463 F.Supp. at 582; *Rivers, supra,* 577 F.Supp. at 770; *Weber, supra,* 640 F.2d at 178.

Buttressing the conclusion that substantial evidence does not support the ALJ's determination that plaintiff has a capacity for sedentary work are the facts that the ALJ improperly disregarded the letters from plaintiff's treating hospital and plaintiff's own testimony that pain and stiffness prevent her from sitting for more than one hour.

The ALJ's disregard of the two letters, notwithstanding their conclusory nature, contravened the requirement that the Secretary "give considerable—and if uncontradicted, conclusive—weight to expert opinions of the claimant's own treating physicians." *Ferraris, supra,* at 1859. *See Aponte v. Secretary, Department of Health and Human Services,* 728 F.2d 588 at 1947, 1954 (2d Cir.1984) ("the opinions of a treating physician deserve special respect"); *Donato v. Secretary of the Department of Health and Human Services,* 721 F.2d 414, 419 (2d Cir.1983).

Both letters indicated on their face that their conclusions that plaintiff was totally disabled and could not work were based upon examinations by doctors on the day on which they were written. At least in a case such as this, where the claimant was unrepresented, the ALJ was bound either

---

**2.** The *Ferraris* court directed that the ALJ should, on determining on remand the claimant's ability to perform sedentary work, take into account Ruling, SSR 83–10, *Titles II and XVI: Determining Capability to do Other Work— The Medical-Vocational Rules of Appendix 2,* [Feb. 1983—Dec. 1983 Transfer Binder] Un-empl.Ins.Rep. (CCH) ¶ 14,531, at 1999–2019 ("sitting should generally total approximately 6 hours of an 8-hour day"); and *Wright v. Secretary of the Department of Health and Human Services,* No. Civ. 81–3963 (E.D.N.Y. July 12, 1983) (six hours sitting required for sedentary work).

to accord considerable weight to the letters' conclusions or to obtain directly from the treating physician such additional information as would have enabled her to determine for herself the reliability of the conclusions. *See Echevarria v. Secretary of Health & Human Services,* 685 F.2d 751, 756 (2d Cir.1982).[3]

The ALJ's unexplained finding that "the claimant's allegation of severe and incapacitating pain is not credible in view of the medical findings", in addition to flying in the face of the majority of the medical evidence in the record—which concludes that plaintiff suffers debilitating pain—also reflects that the ALJ erroneously concluded that a claimant's testimony regarding subjective pain can be disregarded if it is not supported by objective medical evidence. This is plainly not the law of this Circuit. *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979) ("subjective *pain* may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence." (emphasis in original)); *Echevarria, supra,* 685 F.2d at 755.

On the basis of the foregoing, the Court concludes that the Secretary's decision that plaintiff is capable of sedentary work, and was therefore not disabled as of May 1981, is not supported by substantial evidence.[4]

Since no burden of proof problem arises herein,[5] and since the Court perceives no useful purpose which could be served by remanding this case for the taking of additional evidence by a new ALJ,[6] the Court hereby reverses the Secretary's determination of disability and remands the case to the Secretary for the calculation of present and back benefits to be paid to plaintiff.

SO ORDERED.

---

**3.** In *Echevarria,* the Court stated:

> Before the ALJ can reject an opinion of a pro se claimant's treating physician because it is conclusory, basic principles of fairness require that he inform the claimant of his proposed action and give him an opportunity to obtain a more detailed statement.

> 685 F.2d at 756 (quoting *Hankerson v. Harris,* 636 F.2d 893, 896 (2d Cir.1980).

**4.** In her brief, plaintiff raised a further challenge to the Secretary's decision process in the instant case, claiming that the ALJ failed to fulfill her "special obligation to protect the right of unrepresented claimants by fully uncovering all relevant facts." *Echevarria, supra,* 685 F.2d at 753. *See Cullinane v. Secretary of Health and Human Services,* 728 F.2d 137 at 1681, 1686 (2d Cir.1984) ("A reviewing court is charged with the responsibility of ensuring the evidence is both developed and considered"). In light of the Court's determination that the Secretary's decision herein was not supported by substantial evidence, this challenge need not be addressed at length.

However, the Court feels compelled to note that the instant case represents an extreme scenario of a *pro se* claimant being prejudiced by

an ALJ's failure to fulfill her obligation " 'to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.' " *Cullinane,* slip op. at 1686. In light of all the indications in the record that an evaluation of plaintiff's condition could not be complete without further information from plaintiff's treating physicians, the Court can conceive of no excuse for the ALJ's failure to take steps to obtain such information. Such failure clearly had much to do with why the administrative proceedings in this case went awry.

**5.** *See Rivers v. Heckler,* supra, 577 F.Supp. at 771 n. 7.

**6.** Reversal, as opposed to remand for further findings by a new ALJ, will avoid nettlesome problems concerning the time periods for which the question of disability will be readjudicated. It would of course be difficult for the Secretary to obtain further evidence as to the plaintiff's medical condition in May 1981, now almost three years ago. *See* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment ... reversing the decision of the Secretary, with or without remanding the cause for a rehearing.")