**Julian RODRIGUEZ, Plaintiff,**

v.

**John J. CALLAHAN, Commissioner of Social Security, Defendant.**

No. 96 Civ. 3304 (DC).

United States District Court,
S.D. New York.

July 25, 1997.

**151**

the Commissioner's motion for judgment on the pleadings is denied.

### BACKGROUND

#### A. Prior Proceedings

Rodriguez filed an application for SSI benefits on September 16, 1993. The Commissioner initially denied the application and Rodriguez requested reconsideration on March 16, 1994. On April 7, 1994, the Commissioner affirmed the denial of benefits. Rodriguez requested a hearing before an administrative law judge on May 16, 1994.

Administrative Law Judge Louis V. Zamora (the "ALJ") held a hearing on Rodriguez's claims on February 10, 1995. Rodriguez appeared *pro se* at the hearing and testified with the help of a Spanish interpreter. Two weeks later, on February 23, 1995, the ALJ determined that Rodriguez was not disabled within the meaning of the Act and, therefore, was not entitled to benefits. This became the Commissioner's final decision when the Appeals Council denied Rodriguez's request for review.

Plaintiff *pro se* commenced this action for judicial review of the Commissioner's decision on March 29, 1996. On July 2, 1996, Harlem Legal Services, Inc. filed a Notice of Appearance as Rodriguez's counsel in this action.

Harlem Legal Services, Inc. by Gwyneth M. Eliasson, Karen Cheeks–Lomax, New York City, for Plaintiff.

Mary Jo White, United States Attorney for the Southern District of New York by Susan D. Baird, Assistant U.S. Attorney, New York City, for Defendant.

#### MEMORANDUM DECISION

CHIN, District Judge.

Plaintiff Julian Rodriguez ("Rodriguez") brings this action pursuant to section 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), challenging the final determination of the Commissioner of Social Security [1] (the "Commissioner") that Rodriguez is not entitled to Supplemental Security Income ("SSI") benefits based on disability. Rodriguez moves to remand and the Commissioner moves for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) affirming his decision. For the reasons discussed below, Rodriguez's motion for a remand is granted and

#### B. Facts

Rodriguez was born on March 25, 1955, in the Dominican Republic and immigrated to the United States in 1970. He was 39 years old at the time of his February 1995 hearing. Rodriguez has either a seventh grade (Tr. 54) or eighth grade (*id.* at 18) education and can speak only "a little" English. (*Id.* at 17, 18, 54). At his hearing, Rodriguez testified with the assistance of a Spanish interpreter. (*Id.* at 11, 14, 16). Although the ALJ reminded him that he had a right to counsel, Rodriguez waived his right and agreed to proceed without representation. (*Id.* at 16).

---

**1.** John J. Callahan succeeded Shirley S. Chater as Commissioner of Social Security on March 1, 1997. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, John J. Callahan is substituted as the defendant in this suit.

Rodriguez was employed as a sewing machine operator for twelve years. In that job, from a seated position, he operated a sewing machine by using both hands and one foot. (*Id.* at 19). Rodriguez also was required to bend constantly and to carry bundles of material weighing up to 25 pounds. (*Id.* at 55). In 1984, he stopped working because his diabetic condition caused him to feel very ill. (*Id.* at 19).

On November 26, 1991, Rodriguez became a clinic patient at St. Nicholas Medical. (*Id.* at 51, 59, 64). In a note dated September 16, 1993, Gustavo Insignares ("Insignares"), a physician's assistant at St. Nicholas Medical, stated that Rodriguez suffered from insulin dependent diabetes mellitus, but that his condition was under medical control. (*Id.* at 64).

On November 2, 1993, Insignares completed a medical report that indicated that Rodriguez's capacity to lift, carry, sit, stand, walk, push and/or pull suffered no limitation. (*Id.* at 67). Additionally, he had no postural, manipulative, visual, communicative or environmental limitations. (*Id.* at 67–68). Insignares also noted that Rodriguez's electrocardiogram was normal and that he did not suffer from fatigue. (*Id.* at 67). Finally, the report stated that Rodriguez did not display behavior suggestive of a significant psychiatric disorder, but that he occasionally experienced urinary frequency. (*Id.* at 66).

Rodriguez testified that he suffers from headaches, back and arm pain, numbness in his hands and dizziness. (*Id.* at 19). As a result, he can only grasp or hold "for a minute or two." (*Id.* at 20). Rodriguez explained that he has difficulty dressing himself because lifting his arms causes him pain. (*Id.* at 22). He also stated that he "cannot walk long, two or three blocks" (*id.* at 20–21), and that his "blurry vision" prevents him from being able to drive a car. (*Id.* at 18). Rodriguez added that, while he can travel on public transportation without assistance, he can do so only if his destination is "not too far away, a short trip." (*Id.* at 18). He further explained that once a week he travels to his mother's house by taxi and, although he is unable to kneel, goes to church with his brother twice a month. (*Id.* at 21).

## DISCUSSION

### A. *Determining Disability*

A claimant is entitled to disability benefits under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of such severity that the claimant

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The Commissioner has promulgated regulations establishing a five-step procedure for evaluating disability claims. 20 C.F.R. §§ 404.1520, 416.920. The Second Circuit summarized this procedure as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his

past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982); *see also Bowen v. Yuckert* 482 U.S. 137, 140–42, 107 S.Ct. 2287, 2290–92, 96 L.Ed.2d 119 (1987).

The claimant bears the burden of proof with regard to the first four steps; the Commissioner bears the burden of proof as to the last step. *Berry,* 675 F.2d at 467.

■ In evaluating a claimant's ability to engage in substantial gainful activity, the Commissioner considers four categories of evidence: objective medical facts and clinical findings; diagnoses and medical opinions of qualified physicians; subjective evidence of pain and disability; and the claimant's age, education, and work history. *See Mongeur v. Heckler,* 722 F.2d 1033, 1037 (2d Cir.1983); *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980).

**B.  Scope of Review**

■ The standard of review in evaluating disability claims is whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *see also Dumas v. Schweiker,* 712 F.2d 1545, 1550 (2d Cir.1983). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citations omitted). Also, the Commissioner's failure to apply proper legal standards or to provide a full and fair hearing are grounds for judicial review. *Berry,* 675 F.2d at 467.

■ Thus, the Commissioner's decision is afforded considerable deference; the reviewing court should not "substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (quoting *Valente v. Secretary of Health & Human Servs.,* 733 F.2d 1037, 1041 (2d Cir.1984)).

■ Because Rodriguez was *pro se* in the administrative proceedings, the ALJ had

a "duty ... to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Gold v. Secretary of Health, Educ. and Welfare,* 463 F.2d 38, 43 (2d Cir.1972). The ALJ, therefore, had an "affirmative obligation to assist [Rodriguez] in developing [his] case." *See Cruz v. Sullivan,* 912 F.2d 8, 12 (2d Cir.1990) (quoting *Eiden v. Secretary of Health, Educ. & Welfare,* 616 F.2d 63, 65 (2d Cir.1980)). When an ALJ fails to fully develop the record, he fails to perform his affirmative duty. *Echevarria,* 685 F.2d at 755–757 (2d Cir.1982). Finally, if an ALJ fails to assist a *pro se* litigant in securing all of the relevant medical testimony, a remand is appropriate. *Hankerson v. Harris,* 636 F.2d 893, 896 (2d Cir. 1980) (remanding for, *inter alia,* ALJ's failure to advise claimant that he should obtain a more detailed statement from his treating physician); *see also Echevarria,* 685 F.2d at 754 (remanding for, *inter alia,* ALJ's failure to call claimant's examining doctors to testify); *Cullinane v. Secretary of the Dep't of Health and Human Servs.,* 728 F.2d 137, 139 (2d Cir.1984) (remanding for, *inter alia,* ALJ's failure to instruct claimant that she had the right to subpoena and cross-examine a treating physician).

**C.  Review of the ALJ's Determination**

In ruling on Rodriguez's claims, the ALJ applied the procedure to evaluate disability claims enunciated in *Berry.* The ALJ first found that Rodriguez had not engaged in substantial gainful activity since September 2, 1993, when he filed for an application for SSI. (Tr. 12). The ALJ then determined, however, that Rodriguez was not suffering from a severe physical or mental impairment that imposed more than minimal limitations for a twelve month duration on his capacity to perform basic work activities. (*Id.*). Accordingly, the ALJ determined that Rodriguez was not disabled within the meaning of the Act.

■ Upon review of the record, however, I hold that the ALJ failed to fulfill his obligation to assist Rodriguez as a *pro se* claimant. The ALT failed to perform his affirmative duty of assistance to Rodriguez in several ways. For example, the ALJ spent

very little time questioning Rodriguez as evidenced by the transcript, which consumes just over 7 pages. (Tr. 16–23). Moreover, the record contains only two exhibits of medical evidence: a two—sentence note and a four-page report. (*Id.* at 64–68). These items, however, were authored by Insignares, a physician's assistant, and did not reflect the opinion of a medical doctor.

Rodriguez testified that he visited three doctors regularly (Tr. at 20), yet "the ALJ neglected to instruct [Rodriguez] that [he] had a right to subpoena and cross-examine [his] treating physician[s]" or advise him to obtain his medical records from them. *Cullinane v. Secretary of the Dep't of Health and Human Servs.*, 728 F.2d 137, 139 (2d Cir. 1984). Furthermore, although the ALJ stated to Rodriguez, "And if you want to send me anything else, you know, just send it in, anymore medical information" (Tr. at 23), this general invitation to submit additional evidence was insufficient to satisfy the ALJ's duty to assist Rodriguez. The record was devoid of reports from any medical doctor; information from one or more of Rodriguez's treating physicians was thus crucial to the ALJ's ability to make an informed determination. Nevertheless, the ALJ failed to obtain this specific information or at least explain to Rodriguez that this information would be useful to the ALJ's decision.

Hence, this matter is remanded for a fuller development of the record and reconsideration of Rodriguez's claim on the basis of all the relevant facts. *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir.1980); *Gold v. Secretary of Health, Educ. and Welfare*, 463 F.2d 38, 43 (2d Cir.1972).

## CONCLUSION

For the reasons set forth above, Rodriguez's motion for remand is granted and the Commissioner's motion for judgment on the pleadings is denied. This case is remanded for further proceedings consistent with this decision.

SO ORDERED.