**Juana DIAZ, Plaintiff–Appellee,**

v.

**Donna SHALALA, Secretary of the Department of Health & Human Services, Defendant–Appellant.**

**No. 1263, Docket 94–6213.**

United States Court of Appeals, Second Circuit.

Argued April 25, 1995.

Decided June 20, 1995.

Michelle T. Weiner, Asst. U.S. Atty., Brooklyn, N.Y. (Zachary W. Carter, U.S. Atty. E.D.N.Y., Varuni Nelson, Bruce H. Nims, Asst. U.S. Attys., Brooklyn, NY, of counsel), for defendant-appellant.

John E. Antonowicz, Woodbury, NY (Scheine, Fusco, Brandenstein & Rada, P.C., Woodbury), for plaintiff-appellee.

Before: McLAUGHLIN, LEVAL and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

We review a judgment of the United States District Court for the Eastern District of New York (Eugene H. Nickerson, *Judge* ), reversing a final decision by defendant Secretary of Health and Human Services ("the Secretary"), who had found that plaintiff was not entitled to disability benefits under the Social Security Act. 855 F.Supp. 56 (E.D.N.Y.1994). This appeal presents the question whether plaintiff's chiropractor qualified as a "treating physician" whose opinion warranted "controlling weight" or "binding effect" in evaluating plaintiff's claim for disability insurance benefits. Regulations issued by the Secretary and upheld by our court in *Schisler v. Sullivan,* 3 F.3d 563 (2d Cir.1993), provide that a "treating source's opinion" will be accorded "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2) (1994). The regulations make clear, however, that a chiropractor's opinion is not covered by this rule. Because the district court upset the Secretary's adverse finding by giving the chiropractor's opinion controlling weight and because substantial evidence supported the Secretary's finding, *see* 42 U.S.C. § 405(g), we reverse the judgment of the district court.

## I. FACTS

Plaintiff was born in the Dominican Republic in 1946. She has held several jobs both there and in the United States. In the United States she has worked as a sewing machine operator, an eyeglass lens cutting machine operator, a teaching assistant for a day care center, and a census taker. Most recently, she held a job as an electric outlet assembler at the Eagle Electric Factory in New York. While on the job on September 24, 1990, plaintiff fell down an escalator, injuring her head, neck, and back.

After her fall, plaintiff sought workers' compensation and filed an application for disability insurance benefits on June 24, 1991, claiming that she was disabled due to L5 radiculopathy (a disease of the nerve roots) and lower back pain. Her application was denied initially and on reconsideration. Plaintiff then requested a hearing, which was held before an administrative law judge ("ALJ") on June 16, 1992.

The ALJ denied her application in an opinion dated October 28, 1992, finding that the

"clinical and laboratory findings, the opinion and assessment of examining physicians, the treatment she received and the claimant's activities" contradicted the opinion of her chiropractor, Dr. Jacob K. Sadigh, who had concluded that plaintiff was totally disabled. Before deciding whether plaintiff was disabled within the meaning of the Social Security Act, 42 U.S.C. § 423(d),[1] the ALJ carefully considered the following evidence.

*Medical Tests*

An electromyogram taken at the direction of Dr. E. Wiseman on January 21, 1991, was found to be positive for left lumbar radiculopathy involving the L5 nerve root. Nerve stimulation studies, however, were within normal limits. Plaintiff received magnetic resonance imaging (MRI) in March 1991, which, according to Dr. David P. Gerstman, revealed normal findings (*i.e.*, the test was negative). There was no evidence of disc degeneration, disc herniation or nerve root impingement. The test showed also that the spinal cord ended normally and the spinal canal was of normal caliber.

*The Chiropractor's Findings*

Plaintiff began visiting Dr. Sadigh for treatment in October 1990. The frequency of plaintiff's visits to Dr. Sadigh ranged from three times a week to twice a month. Dr. Sadigh reported to the Workers' Compensation Board that plaintiff suffered from acute moderate cervical and lumbar sprain, cervical disc syndrome, lumbar sciatic neuritis and encephalgia (headache). He reported that plaintiff complained mostly of moderate headaches, moderate lower back pain, restricted cervical mobility, difficulty sitting and doing any physical work, and pain in the right arm, right hip, and thigh. In addition, the chiropractor found rigidity in plaintiff's neck muscle, a diminished range of motion and spasm of the cervical spine, nerve root

damage, and reflex loss. He concluded that, as a result of her injuries, plaintiff can perform "[l]ess than a full range of sedentary work."

*Dr. Wiseman's Findings*

Dr. Sadigh referred plaintiff to Dr. E. Wiseman, a specialist in physical medicine and rehabilitation who saw plaintiff several times. Based on an examination of the plaintiff on January 17, 1991, Dr. Wiseman reported a limited range of motion in the lumbosacral region. He noted that "[d]eep tendon reflexes were present and symmetrical bilaterally." On January 21, 1991, he administered an electromyogram and concluded it was positive for left lumbar radiculopathy mostly involving the L5 root. He also conducted a nerve stimulation study that was "within normal limits." Dr. Wiseman concluded that plaintiff was "unable to perform all her usual duties because there is restricted range of motion, pain and muscle spasticity." He recommended that plaintiff continue chiropractic treatment, but the records do not indicate that he prescribed any pain medication. Dr. Wiseman completed plaintiff's Workers' Compensation Board report forms and checked the box marked "total disability."

*Dr. Weiss's Findings*

Dr. David Weiss, an orthopedist, examined plaintiff on August 7, 1991, at the request of the State Insurance Fund, the insurance carrier to the workers' compensation system. He reported that plaintiff was taking Tylenol "as needed" for lower back and neck pain that also affected her legs and right shoulder. He found that plaintiff was able to walk on her heels and toes and that she could bend forward to her ankles; "back bending, however, reproduces moderate discomfort." He found her "cervical spine flexion and extension ... full" and her rotation "mildly

---

1. That section provides in relevant part as follows:
   (1) The term "disability" means—
    (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;

   ....
   (2) For purposes of paragraph (1)(A)—
    (A) An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy....

restricted." Based on his examination, Dr. Weiss concluded that plaintiff had a "mild partial orthopedic disability."

*Dr. Seo's Findings*

Dr. K. Seo, described by the ALJ as an "impartial consultant [for the Social Security Administration]," examined plaintiff on August 24, 1991. Plaintiff stated to him that she had neck and lower back pain, for which she was reported to be taking Tylenol and Motrin as needed. Dr. Seo's examinations indicated that plaintiff walked with a "normal gait," had "no difficulty standing up from the sitting position" or in "getting on and off the examining table." He reported that toe-heel walking and squatting were "possible." He also found the following: "normal flexion and extension" of the cervical spine, "normal ROM [range of motion]" of the lumbosacral spine, a normal range of motion of the hips, a normal range of motion of the shoulders, elbows and wrist with pain in the right shoulder; some "diminished sensation" of the right hand and the right leg; one inch muscle atrophy in the left thigh; and a "mild spasm of the sternocleidomastoid muscles." He concluded that plaintiff had cervical radiculopathy and lumbar radiculopathy. He concluded also that plaintiff "may be able to stand and walk for over one hour and carry more than 10 lbs."

*Dr. Nirou's Findings*

Dr. Nirou examined plaintiff for the Workers' Compensation Board on October 29, 1991. He found "mild restriction in cervical motions in all planes," "mild internal rotation defect of the right shoulder," mild restriction of "trunk motions" and straight leg raising, some numbness of the left lower leg, and a half inch atrophy of the left quadriceps. He reported also that "gross neurological examination are intact" and that her reflexes were "present bilaterally." Based on his examination, he concluded that plaintiff had a "partial disability."

*Plaintiff's Testimony*

Plaintiff testified that she takes Tylenol, Advil, and Motrin four or five times a week for her pain and that she sometimes suffers from dizziness, which lasts two to three days. She testified that she takes Tylenol more often than Motrin. She also testified that she cooks, watches television, walks short distances and attends church. She stated she did not attend church often, however, because she cannot sit down for too long.

*Other Information*

Plaintiff underwent several evaluations at the New York Eye and Ear Infirmary in March and April 1992 for hearing loss. An audiologist reported that plaintiff had "moderately-severe to moderate" hearing loss in the right ear and "mild to slight to mild" hearing loss in the left ear. The audiologist reported also that plaintiff had excellent speech recognition at 10dB in the left ear and 50dB in the right ear.

*The ALJ's Decision*

While finding that "[t]he medical evidence establishes that the claimant has cervical and lumbosacral strain and moderate to mild hearing loss," the ALJ concluded nevertheless that "[t]he claimant's impairments do not prevent [her] from performing her past relevant work" as a sewing machine operator.[2] The ALJ did not credit plaintiff's testi-

---

2. The ALJ followed a five-step process set out in the Secretary's regulations in order to determine whether plaintiff was entitled to disability benefits. 20 C.F.R. § 404.1520 (1994). We described those steps in *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982) (per curiam):

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations [or is equal to an impairment listed there]. If the claimant has such an impairment, the Secretary will consider him disabled.... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

The ALJ in the case at bar found that plaintiff was not currently engaged in substantial gainful activity and suffered from an impairment that affected her ability to perform work-related activity. But the ALJ found that plaintiff did not have

mony about dizziness, noting that neither the chiropractor nor the physicians reported that she complained of dizziness. The ALJ also noted that plaintiff did not appear to take potent pain medication and that Dr. Wiseman, who saw plaintiff on several occasions at her chiropractor's request, "did not indicate potent pain medication was prescribed." The ALJ acknowledged that plaintiff's treating chiropractor and Dr. Wiseman had concluded that she was totally disabled, but found that their opinions were "not well supported by the clinical or laboratory findings." The ALJ observed that the MRI was negative, nerve stimulation studies were normal and the findings on the neurological examination were "mainly normal." The ALJ also noted that the opinions of the chiropractor and Dr. Wiseman (both of whom the ALJ characterized as "treating sources") were "not consistent with other substantial evidence including the findings and opinion of examining physicians." Finding that plaintiff "retains the ability to sit for prolonged period, bend, push and pull and is able to perform some walking and standing," the ALJ concluded that plaintiff could return to her job as a sewing machine operator and therefore was not disabled within the meaning of the Social Security Act, 42 U.S.C. § 423(d)(1)(A).[3]

The Appeals Council denied plaintiff's request for review on May 28, 1993, thereby rendering the ALJ's decision a final determination by the Secretary.

*The District Court's Decision*

Plaintiff brought an action in district court seeking review of the Secretary's decision. Both parties moved for judgment on the pleadings. In a decision dated June 2, 1994, the district court granted plaintiff's motion,

thereby reversing the decision of the Secretary. In doing so, the court held that the opinion of plaintiff's chiropractor had "a binding effect under the treating physician rule in the absence of substantial evidence to the contrary." 855 F.Supp. at 58. Having announced this rule, the district court went on to find that the chiropractor's opinion was indeed "entitled to controlling weight" because substantial evidence did not contradict it.

## II. DISCUSSION

■ The findings of the Secretary are conclusive unless they are not supported by substantial evidence. 42 U.S.C. § 405(g); *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991). The Secretary argues that the district court's holding that substantial evidence did not support her finding was tainted by application of an erroneous legal standard—namely, that the chiropractor's opinion was entitled to "binding effect under the treating physician rule in the absence of substantial evidence to the contrary." 855 F.Supp. at 58.

### A. *A Chiropractor's Opinion Is Not a Medical Opinion*

We had previously left unresolved the question whether a chiropractor could qualify as a "treating physician" or "treating source" whose opinion is entitled to controlling weight under our Circuit's treating physician rule. *See Poole v. Railroad Retirement Bd.*, 905 F.2d 654, 662 (2d Cir.1990).[4] Today we decide a slightly different question because the Secretary issued regulations in August 1991 that we held supplanted the treating physician rule. *Schisler v. Sullivan*, 3 F.3d

an impairment that is either listed in Appendix 1 to Subpart P, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, at 375–449 (1994), or that is of equal severity to an impairment listed there. Consequently, the ALJ had to determine whether plaintiff has the residual functional capacity to perform work she had done in the past. 20 C.F.R. § 404.1520(e) (1994); *Berry*, 675 F.2d at 467. Plaintiff bears the burden of proving that she does not have the residual functional capacity to perform her past work. *Id.*

3. *See supra* note 1.

4. In *Poole*, we held that substantial evidence did not support the United States Railroad Retirement Board's finding that petitioner was not entitled to a total and permanent disability annuity. *Id.* at 662. In so holding, we reasoned that the opinion of petitioner's chiropractor merited "significant weight." *Id.* Our decision today, based on an interpretation of regulations promulgated after the decision in *Poole*, does not prevent the Secretary from according a chiropractor's opinion significant weight in appropriate circumstances.

563 (2d Cir.1993). We hold that it would be inconsistent with these regulations to require the Secretary to give controlling weight to a chiropractor's opinion.

The regulation most relevant to our inquiry provides that the Secretary will give controlling weight to a "treating source's opinion on the issue(s) of the nature and severity of your impairment(s)" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2) (1994) (effective August 1991).[5] This provision is part of a subsection entitled *How we weigh medical opinions.* 20 C.F.R. § 404.1527(d) (1994); a treating source's opinion thus must be a *medical* opinion under this provision's "controlling weight" rule.[6]

According to the regulations, however, a chiropractor's opinion is *not* a medical opinion. The regulations provide that "Medical opinions are statements from physicians and psychologists or other *acceptable medical sources* that reflect judgments about the nature and severity of your impairment(s)...." 20 C.F.R. § 404.1527(a)(2) (emphasis added). Section 404.1513(a) lists five categories of "acceptable medical sources," none of which mentions chiropractors. Instead, chiropractors are expressly listed in a different section, under "other sources" whose "[i]nformation ... may also help us to understand how your impairment affects your ability to work." 20 C.F.R. § 404.1513(e) (1994). Because the regulations do not classify chiropractors as either physicians or "other acceptable medical sources," chiropractors cannot provide *medical* opinions.[7]

---

5. In *Schisler*, 3 F.3d at 567–68, we upheld this regulation while recognizing that it modified our treating physician rule. We noted that the August 1991 regulations differed from the treating physician rule in the following ways: the regulations (1) accord less deference to treating physicians whose opinions are not supported by other evidence; (2) consider the length of the relationship between the treating source and the claimant to be relevant; and (3) permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record. *Id.*

6. 20 C.F.R. § 404.1527(d) provides in relevant part:

(d) *How we weigh medical opinions.* Regardless of its source, we will evaluate every medical opinion we receive....

....

(2) Treatment Relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight....

7. Plaintiff suggests that by failing to consider chiropractors to be physicians or "other accept-

able sources," the Secretary exceeded her authority in promulgating § 404.1513(a), because Congress has "legislated a definition of chiropractors as being physicians." Appellee's Br. at 39. Plaintiff relies on a definition of physicians provided in Title XVIII (Medicare) of the Social Security Act. Plaintiff's argument fails for several reasons. First, under basic canons of statutory construction, the definition of physicians for the purpose of determining what services are reimbursable under Medicare does not govern how physicians should be defined for purposes of determining eligibility for disability benefits under Title II of the Social Security Act. Second, the definition itself is not helpful to plaintiff because it expressly states its limited purpose: "The term 'physician' ... means ... (5) a chiropractor who is licensed as such by the State ... *but only for the purpose of subsections (s)(1) and (s)(2)(A) of this section and only with respect to treatment by means of manual manipulation of the spine (to correct a subluxation demonstrated by X-ray to exist)....*" 42 U.S.C. § 1395x(r) (emphasis added). The subsections this definition cross-references discuss reimbursement for a physician's services and supplies. Thus, all this definition tells us is that chiropractors may be reimbursed under Medicare for services and supplies in connection with manual manipulation of the spine. Moreover, the requirement that a chiropractor's diagnosis—unlike that of a medical doctor—be corroborated by X-ray evidence further undercuts plaintiff's assertion that Congress meant to place chiropractors on a par with medical doctors. Accordingly, 42 U.S.C. § 1395x(r) is not the "governing statute" for purposes of determining who is an acceptable medical source in disability cases and, in any event, 20 C.F.R. § 404.1513(a) does not contradict it.

■ Accordingly, the district court erred when it held that the chiropractor's opinion had "binding effect ... in the absence of substantial evidence to the contrary." Under the current regulations, the ALJ has the discretion to determine the appropriate weight to accord the chiropractor's opinion based on all the evidence before him; under no circumstances can the regulations be read *to require* the ALJ to give controlling weight to a chiropractor's opinion.[8]

## B. *The Secretary's Finding Was Supported by Substantial Evidence*

Had the district court been correct in finding that the chiropractor's opinion was a "medical opinion," then we would have accorded special weight to that opinion and thus looked to see only whether the other substantial evidence rebutted the chiropractor's conclusions. If it did not, then the opinion would enjoy controlling weight and the plaintiff would prevail. However, since a chiropractor's opinion is not a "medical opinion" and therefore, could not be entitled to controlling weight, we look to see whether the Secretary's findings on the whole are supported by substantial evidence.

■ The district court found that substantial evidence did not support the Secretary's finding that plaintiff was not entitled to disability benefits. When analyzed under the proper legal standard, however, it is clear that substantial evidence supported the Secretary's finding. The Supreme Court has defined substantial evidence as "more than a mere scintilla.... [what] a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

In this case, two examining physicians, Dr. Weiss[9] and Dr. Nirou, explicitly found that plaintiff was only partially disabled. A third physician, Dr. Seo, found normal range of motion of plaintiff's lumbosacral spine and normal flexion and extension of the cervical spine. None of these doctors indicated that plaintiff would be unable to perform a job that would require her mostly to sit and push or pull objects. Moreover, an MRI was negative, with no finding of disc degeneration, disc herniation, nerve root impingement or ligamentous damage, and nerve stimulation studies were within normal limits. And plaintiff testified that she primarily takes over-the-counter medicine to alleviate her pain.

Only plaintiff's chiropractor, Dr. Sadigh, explicitly found that plaintiff would be unable to perform even sedentary work. Yet as we have observed, the Secretary had discretion

---

8. Plaintiff's proposed standard—that "the opinion of a treating chiropractor should be given the same weight as the opinion of a treating medical doctor, when such opinion is rendered in relation to limitations stemming from a condition within that chiropractor's area of expertise," Appellee's Br. at 38—is not consistent with the regulations, which decline to impose any hard and fast rule on the weight to be given a chiropractor's opinion and which make clear that a chiropractor's opinion, regardless of whether it concerns an impairment within the realm of the chiropractor's expertise, is not considered an "acceptable medical source." 20 C.F.R. § 404.1513(a) & (e). Other Circuits have also recognized the subordinate status that the opinions of chiropractors occupy under the regulations. *See, e.g., Lee v. Sullivan,* 945 F.2d 687, 691 (4th Cir.1991) (per curiam); *Griego v. Sullivan,* 940 F.2d 942, 945 (5th Cir.1991) (per curiam); *Cronkhite v. Sullivan,* 935 F.2d 133, 134 (8th Cir.1991) (per curiam).

9. The district court did not credit Dr. Weiss's findings because he examined plaintiff at the request of the State Insurance Fund: "[A] report submitted by a witness whose self-interest may well have dictated its contents cannot and should not be permitted to constitute substantial evidence." 855 F.Supp. at 59 (quoting *Odorizzi v. Sullivan,* 841 F.Supp. 72, 78 (E.D.N.Y.1993) and *Cullinane v. Secretary of Dep't of Health & Human Servs.,* 728 F.2d 137, 139 (2d Cir.1984)). Yet in *Cullinane,* the case that announced this proposition, the likelihood of bias was far greater inasmuch as the plaintiff in that case had filed a malpractice suit against the doctor whose opinion was at issue. *Cullinane,* 728 F.2d at 138–39. More significantly, under the district court's standard, virtually every opinion provided would be suspect to the extent it was requested by an interested party (including plaintiff), because it is always arguably in the "self-interest" of the doctor to help the party who requested that he give an opinion. In any event, in weighing all the evidence, the ALJ appears to have taken account of any possible bias by those who provided opinions, singling out Dr. Seo as an "impartial consultant."

to decide what weight, if any, Dr. Sadigh's opinion deserved in the circumstances presented. The ALJ ultimately accorded little weight to Dr. Sadigh's opinion because he found it to be "not well supported" by the clinical or laboratory findings or by the other substantial evidence. While Dr. Wiseman, a specialist in physical medicine and rehabilitation—to whom plaintiff was referred by Dr. Sadigh, and whom the ALJ also considered a "treating source"—found plaintiff to be totally disabled for purposes. of workers' compensation,[10] he found many fewer problems with plaintiff's spine than did Dr. Sadigh. And the ALJ found that Dr. Wiseman's opinion likewise was inconsistent with other substantial evidence, such as the other physicians' reports and medical tests.[11]

The opinions of three examining physicians, plaintiff's own testimony, and the medical tests together constitute substantial evidence adequately supporting the Secretary's conclusion that plaintiff's injuries did not prevent her from resuming her job as a sewing machine operator.[12] Accordingly, we must reverse the judgment of the district court.

### C. *Other Claims*

■ Plaintiff contends that we must remand the case because the ALJ failed to make sufficiently specific findings regarding her ability to perform her past work as a sewing machine operator. In fact, the ALJ explicitly found that "based on the record the claimant retains the ability to sit for prolonged period, bend, push and pull and is able to perform some walking and standing." In making this finding, the ALJ relied on the fact that no examining physician, including the "impartial consultant," Dr. Seo, had indicated that plaintiff had difficulty sitting for a prolonged period of time. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir.1983) ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say."). Only the chiropractor had made a finding that plaintiff could not sit for prolonged periods of time (one hour at most and no more than two hours in an eight-hour work day), which the ALJ had the discretion to discount. Because the burden was on plaintiff to prove that she could not resume her work as a sewing machine operator, *see Berry*, 675 F.2d at 467, it was proper for the ALJ to rely on the absence of findings by any physician concerning plaintiff's alleged inability to sit for prolonged periods in deciding that she could resume her work as a sewing machine operator.[13]

10. The Secretary argues that in checking off the "total disability" box on the Workers' Compensation forms Dr. Wiseman indicates only that he found plaintiff unable to perform her job as an electrical outlet assembler—the job she held when she suffered her bad fall and for which she sought compensation. We need not resolve this question because we find that, even assuming he had found plaintiff unable to perform any job, substantial evidence would still contradict his finding.

11. Therefore, assuming Dr. Wiseman examined plaintiff enough times (five) to be considered a "treating source," the ALJ justified his decision not to accord Dr. Wiseman's opinion controlling weight.

12. Plaintiff argues that the evidence in this case cannot meaningfully be distinguished from that in *Poole*, where we found that the substantial evidence did not support the finding of the United States Railroad Retirement Board that petitioner was not totally disabled. We disagree. In *Poole*, "all of [the] specialists ha[d] reached substantially the same conclusion that Poole [wa]s in fact disabled." 905 F.2d at 662. Three doctors in that case agreed that Poole suffered disc herniation. *Id.* Poole, who had suffered a contusion to the right scrotum and groin "was unable to perform basic sanitary functions and required ... large doses of analgesics." *Id.* at 656. We noted also that Poole was "unable to sit or stand for more than a few minutes at a time ... to bend or squat or lift objects weighing as much as a bottle of milk." *Id.* at 664. The record in this case indicates neither a substantial consensus among the examining physicians that plaintiff is totally disabled nor that her injury was of a severity equal to Poole's.

13. In *Ferraris v. Heckler*, 728 F.2d 582, 586 (2d Cir.1984), we found the ALJ's findings on the question of the disability claimant's residual functional capacity to engage in sedentary work to be "wholly insufficient." The ALJ in that case found that the claimant could perform sedentary work in the face of conflicting reports from several physicians about the length of time Ferraris could sit. In light of this conflicting evidence, we found it incumbent upon the ALJ to make specific findings on Ferraris's "ability to sit and for how long." *Id.* at 587. We noted also that, in determining whether Ferraris could perform sedentary work, the ALJ should consider the Secretary's suggestion in a Ruling, SSR 83–10, that sedentary work involves sitting for six hours out of an eight hour day. *Id.* at 587 & n. 3.

Finally, plaintiff urges that we remand the case to the Secretary for a supplemental hearing to allow plaintiff the opportunity to cross-examine Dr. Weiss, whose report was included in the workers' compensation file and was submitted by plaintiff to the ALJ one day after the hearing upon the ALJ's request. Plaintiff objected to its introduction into evidence without being granted the concomitant opportunity to cross-examine the report's author. The ALJ never ruled on plaintiff's objection, issuing a ruling without any additional hearing. Plaintiff contends that the ALJ's failure to permit cross-examination of Dr. Weiss violated her due process rights, citing *Townley v. Heckler*, 748 F.2d 109 (2d Cir.1984) (holding that disability claimant's due process rights were violated where ALJ relied on post-hearing report of vocational expert), and *Gullo v. Califano*, 609 F.2d 649 (2d Cir.1979) (holding that disability claimant's due process rights were violated where ALJ relied on post-hearing report). In *Gullo*, the ALJ ordered the claimant to submit to a post-hearing examination and relied on the report of that examination, which was completed *after* the hearing was held. *Id.* at 649–50. In *Townley*, the ALJ relied upon post-hearing correspondence with a vocational expert before reaching a decision. *Townley*, 748 F.2d at 114. The ALJ informed Townley's attorney about his need for a vocational expert only after receiving the vocational expert's post-hearing report, which the claimant never even had an opportunity to examine. *Id.*

The Secretary argues that because plaintiff was represented by the same law firm in her earlier workers' compensation case, plaintiff's counsel had "knowledge of and access to" Dr. Weiss's report long before the hearing was held. In the Secretary's view, the Supreme Court's decision in *Richardson v. Perales* is therefore more apposite than *Gullo* or *Townley* to the facts of this case. In *Perales*, the Court held that the claimant's

failure to take advantage of his opportunity to request subpoenas for the physicians whose reports were relied upon in his Social Security disability claim hearing precluded claimant's contention that he was denied the right of cross-examination. 402 U.S. at 404–07, 91 S.Ct. at 1428–30. Because Dr. Weiss's report was completed and available to plaintiff and her attorneys well before the hearing was held, the Secretary contends, plaintiff had an adequate opportunity to subpoena Dr. Weiss, unlike the claimants in *Gullo* and *Townley*.

We agree with the Secretary. Plaintiff knew that she had been examined by Dr. Weiss at the behest of the Workers' Compensation Board, and should have known that his report would be included in the Board's file—portions of which her attorneys sought to introduce at the disability benefits hearing. Furthermore, plaintiff was represented by the same law firm before both the Workers' Compensation Board and the Social Security Administration. Accordingly, "knowledge" of Dr. Weiss's report is imputable to both plaintiff and her counsel. Because the medical report was available upon request from the Workers' Compensation Board, plaintiff and her counsel also had "access" to the medical report. We therefore reject her final challenge to the proceedings before the ALJ.

## III. CONCLUSION

To summarize:

1. The regulation issued by the Secretary in August 1991, 20 C.F.R. § 404.1527(d), cannot be read to require the Secretary to accord controlling weight to the opinion of a chiropractor. Rather, the Secretary has the discretion to give a chiropractor's opinion the weight she believes it deserves based on the facts of the particular case.

---

In *Ferraris*, however, the burden was on the Secretary to show that the claimant could perform "some less demanding, but gainful, employment," *id.* at 584, because the claimant had met his ultimate burden of proving that he could not return to his past work as a waiter. By contrast, in the case at bar, not only was the burden on plaintiff, but also no physician indicated any

limitations on plaintiff's ability to sit. Accordingly, it was reasonable for the ALJ to conclude from the absence of particular findings by "acceptable medical sources" that plaintiff could sit for a "prolonged period" and that, based on plaintiff's testimony about what her past work as a sewing machine operator entailed, she could resume that job.

2. Substantial evidence supported the Secretary's finding, on the record as it now stands, that plaintiff was not disabled within the meaning of the Social Security Act, 42 U.S.C. § 423(d)(1)(A).

3. The ALJ made the requisite specific findings regarding plaintiff's ability to perform her past work as a sewing machine operator.

Accordingly, the judgment of the district court is reversed.