**Arabelle PARKER, Plaintiff,**

v.

**John J. CALLAHAN, Acting Commissioner of Social Security, Defendant.**

**No. 3:97CV0124(RNC).**

United States District Court, D. Connecticut.

Sept. 28, 1998.

Louis S. Avitabile, Avitabile & Spat, Waterbury, CT, Meryl Anne Spat, Waterbury, CT, for plaintiff.

Deirdre Anne Martini, U.S. Attorney's Office, Bridgeport, CT, for defendant.

*RULING ON DEFENDANT'S MOTION FOR ORDER AFFIRMING THE DECISION OF THE COMMISSIONER*

CHATIGNY, District Judge.

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits. Defendant moves for an order affirming the decision of the Commissioner. Plaintiff opposes the motion and seeks a reversal or remand. She contends that she is disabled within the meaning of the Social Security Act due to a psychological impairment and chronic low back pain and that a remand is required to obtain radiological evidence regarding her back condition. Defendant's motion is granted because the

Commissioner's decision is supported by substantial evidence.

I. *Background*

Plaintiff is a 60–year–old woman with a history of high blood pressure and low back pain. She completed high school and worked as a telephone operator. She then worked as a circuit board assembler for many years, but her job was eliminated in 1991, when she was 54 years old. She managed to obtain work with another company as a circuit board assembler; however, she was laid off approximately two months later and has not worked since.

In June 1993, plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act,[1] alleging disability due to a back disorder and high blood pressure. In September 1993, plaintiff's application was denied. The agency determined that, despite plaintiff's history of being treated for high blood pressure and a back problem, she could perform her previous work as a circuit board assembler. Attached to the Disability Determination Rationale form was a Residual Physical Functional Capacity Assessment, completed by Marie H. Monticciolo, M.D. on September 16, 1993, showing a primary diagnosis of "degenerative changes L4–5," based on an x-ray study of September. 7, 1993, which revealed "slow deg[enerative] changes L4–5."[2] Dr. Monticciolo concluded that plaintiff could lift 25 pounds frequently, stand/walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. No limitations were indicated.

Plaintiff sought reconsideration of the initial decision and complained of additional difficulties involving confusion, memory loss and emotional problems. A Psychiatric Review Technique form was completed and additional medical reports were considered. Nevertheless, the agency once again concluded that plaintiff had "the skills and ability to return to [her] past customary job," and affirmed the September 1993 determination.

---

1. Plaintiff filed another application for disability, this time under Title XVI of the Act (Supplemental Security Income), on October 26, 1994.

2. Dr. Monticciolo's assessment appears to have been based on a September 1993 report from Naugatuck Radiology Associates.

On February 1, 1994, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on March 13, 1994 before ALJ Stanley T. Fuger. Plaintiff, who was represented by counsel, testified regarding a variety of maladies, including not being able to "sit for long" or "stand all day" because of lower back pain. Edmond Calandra, a vocational expert, testified that plaintiff's past work as a circuit board assembler was sedentary and unskilled. In response to a series of questions, he also testified that if plaintiff's testimony concerning her back pain and associated limitations was completely credible, she would not be able to engage in any occupation.[3]

The ALJ was provided with reports from plaintiff's treating physician, Dr. Fishman, who completed two residual functional capacity forms—one for mental ability and one for physical ability. On the mental assessment form, Dr. Fishman indicated that plaintiff's ability to make occupational adjustments was good,[4] with the exception of relating to co-workers (fair-seems angry), dealing with the public (fair) and dealing with work stresses (fair). Dr. Fishman noted that plaintiff seemed "depressed" but rated plaintiff's ability to make performance adjustments and personal/social adjustments as consistently unlimited/very good—the highest rating. On the physical ability form, Dr. Fishman indicated that plaintiff's condition would not impair her ability to lift/carry, stand/walk or sit, and that "other than significant obesity I don't think this p[atien]t is limited in her abilities."[5]

The ALJ obtained consultative reports from Drs. Siva, Campagna, Caffrey, and De-Figueiredo. The reports reach differing con-clusions. Dr. Siva, a physician specializing in internal medicine, found that plaintiff's "sitting, ambulating, standing, bending, lifting are minimally or mildly affected by the low back pain which is intermittent," and Dr. Campagna, a psychologist, found that "the patient's deficits are not expected to interfere with her capacity to perform familiar activities of daily living." On the other hand, Dr. DeFigueiredo, a physician, found that plaintiff's ability to "perform routine, repetitive tasks . . . appears to be limited," and Dr. Caffrey, a psychiatrist, found that plaintiff was depressed and not employable.

On July 28, 1995, the ALJ issued his decision. The ALJ concluded that plaintiff could return to her past relevant work as a circuit board assembler and was thus not entitled to disability benefits. The ALJ found that plaintiff had "a severe back disorder, and organic brain disorder" but did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. The ALJ found that plaintiff "retains the residual functional capacity to occasionally lift objects weighing up to 20 pounds and to frequently lift objects weighing up to ten pounds. Her abilities to sit, stand, and walk are not significantly limited." The ALJ stated that plaintiff's "testimony was not entirely credible, nor was it consistent with the statements in the record" and that her subjective symptoms "do not prevent her from performing all substantial gainful activity."

In making these findings, the ALJ relied heavily on Dr. Fishman's assessment that "other than the claimant's obesity she has no other significant problems." The ALJ dis-

---

3. At the hearing, plaintiff's counsel noted that, although plaintiff believes she suffers from a herniated disc, there were no "MRIs or X-rays" in the file. The ALJ suggested that plaintiff's counsel "re-request" the records of plaintiff's treating physician, Dr. Fishman, apparently because he assumed those records would include x-rays. In fact, Dr. Fishman's records did not include x-rays, but the administrative file (Exhibit 2, Tr. 92–101) included Dr. Monticciolo's report, which took account of the September 1993 x-ray showing "slow deg[enerative] changes [of] L4–5."

4. The range of ratings was unlimited/very good, good, fair, and poor/none.

5. Plaintiff contends that Dr. Fishman's opinions should not be given the weight usually accorded the opinions of a treating physician. However, it is undisputed that Dr. Fishman has been plaintiff's primary physician since 1991, and the record shows that Dr. Fishman saw plaintiff at least eleven times in the fourteen-month period from December 1993 to January 1995. The record indicates that plaintiff is dissatisfied with the treatment she has received from Dr. Fishman but she has not provided a cogent reason for discounting the opinion of her treating physician.

counted Dr. Caffrey's conclusion that plaintiff was not employable because it was based on a single visit and was not supported by the doctor's findings.[6] The ALJ noted that plaintiff stopped working in 1991 because she was laid off, not because of pain. In addition, he recounted plaintiff's testimony that she could stand for one-half hour, lift five pounds, sit for one hour, watch television, help to prepare meals, and feed and dress herself.

Plaintiff requested review of the ALJ's decision, but the Appeals Council denied her request, rendering the ALJ's determination the final decision of the Commissioner of Social Security. Plaintiff brought this action to appeal the Commissioner's decision, and defendant's motion seeks an order affirming the decision.

## II. *Discussion*

A person is disabled within the meaning of the Social Security Act

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for

him, or whether he would be hired if he applied for work.[7]

In determining whether an individual is eligible for disability benefits, the agency considers "the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B).[8] To be designated a "physical or mental impairment," the condition must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). If a medical source determines in his opinion that a claimant is "unable to work," his determination does not bind the Commissioner. 20 C.F.R. § 416.927(e)(1).

▮ It is well settled that the findings of an ALJ are conclusive unless they are not supported by substantial evidence. *See Diaz v. Shalala,* 59 F.3d 307, 312 (2d Cir.1995).[9] That said, this court is to "consider[ ] the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen,* 859 F.2d 255, 258 (2d Cir.1988). Still, the resolution of evidentiary conflicts falls to the ALJ rather than to this court, as does the appraisal of witness credibility. *See Aponte v. Secretary, Dept. of*

6. Dr. Caffrey found that plaintiff had no disorder of perception and that her intellectual functioning was intact.

7. The Social Security Act defines "disability" as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

8. The five-step process followed by an ALJ to determine whether plaintiff is entitled to disability benefits is as follows:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considered whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based

solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations [or is equal to an impairment listed there]. If the claimant has such an impairment, the Secretary will consider him disabled.... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

*Diaz v. Shalala,* 59 F.3d 307, 312 n. 2 (2d Cir. 1995) (quoting *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982) (per curiam)).

9. According to the Supreme Court, substantial evidence constitutes "more than a mere scintilla .... [what] a reasonable mind might accept as adequate to support a conclusion." *Id.,* 59 F.3d at 314.

*HHS*, 728 F.2d 588, 590 (2d Cir.1984). Agency regulations provide that the ALJ will give controlling weight to the opinion of plaintiff's treating physician if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Diaz*, 59 F.3d at 313 (quoting 20 C.F.R. § 404.1527(d)(2)).

 The ALJ's decision denying plaintiff's application is supported by substantial evidence. In the opinion of plaintiff's treating physician, Dr. Fishman, plaintiff's mental ability ranged from fair to very good, and her physical condition resulted in no impairment in her ability to lift/carry, stand/walk, or sit. Dr. Siva's report confirms that plaintiff's low back pain is "intermittent" and in no way indicates that plaintiff's condition would prevent her from resuming her past occupation. Dr. Campagna's psychological assessment concludes that plaintiff's impairment would not negatively affect her performance of routine or familiar tasks.

Plaintiff emphasizes that the ALJ's determination is inconsistent with the opinions of Dr. Caffrey and Dr. DeFigueiredo. The ALJ declined to credit Dr. Caffrey's opinion that plaintiff is not "employable" because his opinion is not supported by his findings and is based on only one visit. In light of the reports of Drs. Fishman, Campagna, Siva and Monticciolo, which show no disabling impairment, the ALJ's decision to decline to credit the opinion of Dr. Caffrey did not constitute an abuse of discretion.

The ALJ appears to have misconstrued the report of Dr. DeFigueiredo, which states that plaintiff's "ability to perform routine, repetitive tasks also appears to be limited." The ALJ apparently interpreted that statement to mean that plaintiff "has the ability to perform routine repetitive tasks." Still, the treating physician, Dr. Fishman, found no such limitation, and resolving evidentiary conflicts falls within the ALJ's purview.

 Plaintiff launches a series of complaints that do not warrant a remand. She asserts that no Psychiatric Review Technique form was completed but a completed form is contained in the administrative record. (Pl. Mem. at 4; Tr. 110). She asserts that no x-rays have been taken, despite plaintiff's belief that she has a herniated disc, but Dr. Monticciolo's report discusses the x-ray study done in September 1993, which showed "slow deg[enerative] changes of L4–5," not a herniated disc. (Exhibit 2, Tr. 92–101).[10] She notes that the administrative record omits one doctor's report but a remand for the purpose of trying to obtain the missing report is unnecessary because there is no reason to believe the report would undermine the reports of Drs. Fishman, Campagna, Siva and Monticciolo, which provide substantial evidence to support the ALJ's decision.

### III.  *Conclusion*

Accordingly, defendant's motion is hereby granted. The Clerk may close the file.

So ordered.

---

**10.** The ALJ was not required to order a new set of x-rays, as plaintiff urges. Courts have required ALJs to order x-rays to ensure development of a full and fair administrative record, but only when x-rays are entirely absent or have not been taken for a long period of time. *See, e.g., Thompson v. Sullivan*, 933 F.2d 581, 587 (7th Cir.1991) ("given that the last x-rays of Thompson's spine were taken in December of 1978, the ALJ's duty to sufficiently develop the record would suggest the need to order additional x-rays or other imaging tests to ascertain the extent of degeneration of Thompson's back and neck."); *Baker v. Bowen*, 886 F.2d 289, 291–92 (10th Cir.1989) ("[w]e are at a loss to understand why the Secretary ordered a consultative physical examination without requesting that recent x-rays of Mrs. Baker's spine be taken.... [T]he secretary failed in his important burden of fully and fairly developing the record by neglecting to obtain new x-rays...."); *Banks v. Bowen*, 672 F.Supp. 310, 320 (N.D.Ill.1987) ("X-rays ... might well have been extremely helpful toward reaching the disability decision ... and that would have furthered the ALJ's obligation to develop a complete record"); *Diller v. Bowen*, 654 F.Supp. 628, 630 (W.D.Pa.1987) ("The refusal to obtain x-rays ... prevented a full and fair inquiry into the plaintiff's overall condition...."); *Gyurko v. Harris*, 487 F.Supp. 1121, 1129–30 (D.Conn.1980) (Cabranes, J.).