**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 22 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SHIRLEY H. ST. CLAIR,

Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner
of Social Security Administration,

Defendant-Appellee.

No. 99-5063
(D.C. No. 97-CV-1099-J)
(N.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **BALDOCK** , **BRISCOE** , and **LUCERO** , Circuit Judges.

Plaintiff appeals the district court's decision affirming the Commissioner's

denial of plaintiff's application for social security disability benefits. [1] Plaintiff

filed for benefits in June 1990 claiming she had been disabled since December

1988 due primarily to back problems and asthma. Plaintiff was last insured for

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

insurance benefits on December 31, 1992, so she had to show she was disabled before that date in order to receive benefits. *See Potter v. Secretary of Health & Human Servs.*, 905 F.2d 1346, 1347 (10th Cir. 1990) (per curiam). Her application was denied at the administrative level after a hearing before an administrative law judge (ALJ) in 1993. On appeal, this court reversed and remanded for additional vocational evidence concerning plaintiff's transferable skills. On remand, another ALJ held a supplemental hearing in May 1997 and issued a decision shortly thereafter denying plaintiff's application.

The ALJ concluded that degenerative changes in plaintiff's spine constituted a severe impairment, and that the impairment prevented her from doing her past relevant work, which was performed at the medium and light levels of exertion. The ALJ further concluded, however, that plaintiff could still perform a full range of sedentary work and that there were a significant number of sedentary jobs in the local and national economy that she could perform. Therefore, he found that plaintiff was not disabled. Plaintiff filed exceptions with the Appeals Council, which declined to assume jurisdiction. *See* 20 C.F.R. § 404.984. The ALJ's decision, therefore, became the final decision of the Commissioner. *See id.* Plaintiff appealed the agency's decision to the district court, which affirmed, and this appeal followed.

Plaintiff raises three broad challenges on appeal: 1) the ALJ did not make a proper pain and credibility assessment; 2) the ALJ's determination that plaintiff could sit for prolonged periods sufficient to perform sedentary work violated the treating physician rule and was not supported by substantial evidence; and 3) the ALJ erred in failing to include a manipulative limitation in his residual functional capacity (RFC) assessment. Our review of the Commissioner's decision is limited to determining whether the correct legal standards were applied and whether the findings are supported by substantial evidence in the record viewed as a whole. *See Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). "In conducting our review, we may neither reweigh the evidence nor substitute our judgment for that of the Commissioner." *Qualls v. Apfel*, ___F.3d ___, No. 99-5014, 2000 WL 296847, at *1 (10th Cir. Mar. 22, 2000). In addition, our review "is limited to the issues the claimant properly preserves in the district court and adequately presents on appeal." *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996). [2]

---

[2] As an alternative ground for affirming the denial of benefits, the district court held that plaintiff waived certain of her arguments by failing to raise them to the Appeals Council. *See James v. Chater*, 96 F.3d 1341, 1344 (10th Cir. 1996) (holding that "issue not brought to the attention of the Appeals Council on administrative review may . . . be deemed waived on subsequent judicial review"). Under the particular circumstances presented here, however, we exercise our discretion not to apply the administrative waiver rule.

In the district court, plaintiff challenged the ALJ's pain and credibility analysis on the sole ground that the ALJ failed to "point to specific evidence related to specific factors to support his rejection of [plaintiff's] claims." Plaintiff's Memorandum of Law at 4. Plaintiff argued that the only evidence the ALJ articulated in support of his credibility determination was a single anomaly in plaintiff's testimony which, she argued, was "a mere scintilla of evidence insufficient to support a conclusion of no credibility." *Id.* The district court rejected plaintiff's argument because it ignored the fact that the ALJ's reference to the anomaly in plaintiff's testimony was simply an addition to the detailed analysis of plaintiff's credibility that the first ALJ set forth in his 1993 decision and which the current ALJ specifically adopted and incorporated by reference in his own decision.

On appeal, plaintiff again argues that the single reference to an anomaly in her testimony was not sufficient to support the ALJ's credibility determination. We reject this argument for the same reason articulated by the district court. Plaintiff also argues for the first time that 1) the current ALJ was prohibited from adopting the earlier ALJ's decision and 2) the earlier ALJ's credibility analysis was flawed. "Absent compelling reasons, we do not consider arguments that were not presented to the district court." *Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir.

-4-

1994). We see no reason to deviate from that general rule here and, therefore, we will not review these two belated challenges to the ALJ's credibility analysis.

Plaintiff's second point of error concerns the ALJ's determination that she could perform sedentary work, which requires prolonged sitting. Plaintiff contends that this determination is not supported by substantial evidence because the ALJ did not "point to specific evidence to outweigh the treating source evidence which established that [plaintiff] was unable to perform prolonged sitting." Appellant's Br. at 25. Plaintiff refers to the following as "treating source" evidence supporting her argument: Dr. Sibley, a chiropractor who treated plaintiff for several months in 1990, stated that she "has great difficulty with standing or sitting for long periods of time," Appellant's App., Vol. II, Pt. 1 at 236, 240; a physical therapist who saw plaintiff on April 9, 1992, noted that plaintiff "[o]nly tolerates sitting for about 20 minutes," *id.*, Pt. 2 at 424; and Dr. Harold Goldman, a non-examining physician who answered interrogatories from the ALJ in 1991, noted that the records he reviewed showed plaintiff "has had some limitation to . . . sitting," *id.* at 354. *See* Appellant's Br. at 25 n.5.

Plaintiff cites our opinion in *Reyes v. Bowen*, 845 F.2d 242 (10th Cir. 1988), and argues that the ALJ did not apply the proper legal standards in weighing the evidence because he did not apply the treating physician rule to the opinions of Dr. Sibley, the physical therapist, and Dr. Goldman. While we may

not reweigh the evidence, *see Qualls*, 2000 WL 296847, at *1, we may review whether the ALJ followed the "specific rules of law that must be followed in weighing particular types of evidence," *Reyes*, 845 F.2d at 244.

The record showed that plaintiff was treated by Dr. Sibley from March 22 through June 14, 1990. In September 1990, Dr. Sibley wrote a letter in which he expressed the opinion that plaintiff was "disabled for most physical job descriptions," due in part to the fact she has "great difficulty with sitting or standing for long periods of time." Appellant's App., Vol. II, Pt. 1 at 240. Dr. Sibley subsequently saw plaintiff two more times, in December 1990, after which he wrote a second letter expressing the same opinion. *See id.* at 236. The ALJ found Dr. Sibley's opinion to be of limited value, in light of record evidence about plaintiff's back problems from what he referred to as more qualified medical personnel.

The record contained evidence from various medical doctors who treated plaintiff for her back problems, including several specialists. While these treating physicians generally did not address how plaintiff's medical problems affected her ability to do work-related tasks, the ALJ also relied on opinions from two non-treating physicians who specifically addressed that issue. The first opinion was from Dr. Cooper, an osteopath, who examined plaintiff in September 1990. Based on plaintiff's medical history and the examination, Dr. Cooper was of the

opinion that plaintiff "would have impairment in prolonged standing, walking, bending, twisting, and lifting;" he did not suggest that plaintiff would have any difficulty with prolonged sitting.    *Id.* at 298.  Another non-treating opinion upon which the ALJ relied was that of Dr. Andelman, who testified at the June 1993 hearing based on his examination of all the medical records.  Dr. Andelman noted that plaintiff had been complaining of back problems since she was in high school, and he testified that, although plaintiff contended her condition was getting worse, the objective findings in the record did not support her contention. Dr. Andelman was of the opinion that plaintiff had both back problems and breathing problems, but that her impairments were not so severe as to prevent her from working.

Whether the ALJ properly credited the opinions of non-treating physicians over that of a treating chiropractor depends on whether the treating physician rule applies to Dr. Sibley's opinion, as plaintiff contends.  In 1991, the Secretary of Health and Human Services promulgated regulations pertaining to the treating physician rule that codified existing Tenth Circuit law.    *See Castellano*, 26 F.3d at 1029.  The regulations provide that the agency generally will give more weight to medical opinions from treating sources than those from non-treating sources and that the agency will give controlling weight to the medical opinion of a treating source if it is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2).

The regulations define the term "medical opinion" as "statements from physicians and psychologists *or other acceptable medical sources* that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *Id.* § 404.1527(a)(2) (emphasis added). The regulations further define the term "acceptable medical sources" to include "(1) Licensed physicians; (2) Licensed osteopaths; (3) Licensed or certified psychologists; (4) Licensed optometrists . . .; and (5) Persons authorized to send [the agency] a copy or summary of the medical records of a hospital, clinic, sanatorium, medical institution, or health care facility." *Id.* § 404.1513(a). Chiropractors are not included in the list of "acceptable medical sources." Rather, they are included as an example of an "other source" in § 404.1513(e).

Because Dr. Sibley was not an acceptable medical source, the ALJ was not required to apply the treating physician rule when weighing Dr. Sibley's opinion. *See Hartranft v. Apfel*, 181 F.3d 358, 361-62 (3d Cir. 1999) (holding chiropractor's opinion not entitled to controlling weight under treating physician rule); *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) (same); *Diaz v. Shalala*, 59 F.3d 307, 313 (2d Cir. 1995) (same). Instead, the ALJ

had discretion to determine what weight to give Dr. Sibley's opinion based on all the evidence before him. *See Walters*, 127 F.3d at 530; *Diaz*, 59 F.3d at 314; *see also Cronkhite v. Sullivan*, 935 F.2d 133, 134 (8th Cir. 1991) (holding that "ALJ properly gave little weight to the opinions of [claimant's] chiropractors because such evidence is not considered an 'acceptable source' of medical information to prove disability"). The ALJ chose to give Dr. Sibley's opinion little weight.

Nor was the ALJ required to apply the treating physician rule to the statements of either plaintiff's physical therapist or Dr. Goldman. Like Dr. Sibley, the physical therapist was not an "acceptable medical source." Moreover, her notation about plaintiff's ability to sit for only twenty minutes was contained within her initial recitation of plaintiff's history and did not appear to be a product of her own observation. Thus, the statement was simply evidence of a subjective complaint by plaintiff. Finally, Dr. Goldman's answers to the interrogatories were not entitled to controlling weight because he neither treated nor examined plaintiff. Moreover, his comment that plaintiff had some limitation in sitting was not necessarily inconsistent with the ALJ's finding that she could perform sedentary work. [3]

---

[3] The ALJ expressly chose not to rely on Dr. Goldman's answers to interrogatories because Dr. Goldman did not have the benefit of medical records that were subsequently introduced into the record and because Dr. Andelman later reviewed all the records and testified at a subsequent hearing, where he was

(continued...)

The ALJ did not err in choosing to credit other evidence more than the opinions of Dr. Sibley, the physical therapist, and Dr. Goldman. Both Dr. Cooper and Dr. Andelman were acceptable medical sources, their opinions were not inconsistent with the findings of plaintiff's treating physicians, and their opinions supported the ALJ's conclusion that plaintiff could perform sedentary work. Therefore, we conclude the ALJ's determination that plaintiff could sit long enough to perform sedentary work was supported by substantial evidence.

As her final point of error, plaintiff contends that the ALJ should have included a manipulative limitation in his RFC assessment because the evidence showed that plaintiff was experiencing some pain and stiffness in her hands prior to the expiration of her insured status in December 1992. Specifically, plaintiff points to evidence provided by Dr. Cooper, Dr. Zanetakis, and Dr. Huettner. Dr. Cooper examined plaintiff in September 1990. He found that plaintiff had full range of motion in her elbows, wrists, and fingers, that her grip strength was good and equal on both sides, and that both her finger-to-finger manipulation and her finger pointing were good, but he did note that plaintiff's responses to the light touch sensation testing indicated "some reduction of light touch" in the fingers of her right hand. Appellant's App., Vol. II, Pt.1 at 298.

---

[3](...continued)
subject to cross-examination by plaintiff's attorney.

Dr. Zanetakis, a rheumatologist, examined plaintiff in January 1991. She found that all the joints of plaintiff's upper extremities were cool and nontender, except for one joint of plaintiff's second finger on her right hand, which was "slightly tender, but not swollen." *Id.* at 301.

Dr. Huettner, another rheumatologist, began treating plaintiff on April 9, 1992, for her back and other pain. His examination that day revealed some tenderness in some of her finger joints as well as "mild limitation of motion" in some of the finger joints of her right hand. *Id.*, Pt. 2 at 410. X-rays taken that day showed "some mild degenerative change with some hypertropic spurring" in some of the finger joints, but no "erosive change typical of rheumatoid arthritis," nor "any soft tissue swelling." *Id.* at 423.

When Dr. Huettner saw plaintiff on May 8, 1992, she complained of tenderness in some of the joints of her right hand, and she had some mild limitation of motion in those joints, but Dr. Huettner did not see any swelling. At her visit on June 9, 1992, plaintiff complained of tenderness in some of her finger joints, but her range of motion was good. Dr. Huettner's notes from plaintiff's November 6, 1992 examination do not show any complaints of pain in plaintiff's hands, and she had good range of motion in her hands. When plaintiff saw Dr. Huettner on April 30, 1993, after her insured status had expired, she complained only of pain in her back and knees.

At the hearing on June 23, 1993, plaintiff was questioned by both the ALJ and her attorney about her various ailments and she never mentioned any problem with her fingers or hands. In fact, plaintiff testified that she did cross-stitching and other handcrafts for a hobby and that the only impairments preventing her from working were her back pain and asthma. Four years later, at the hearing on May 15, 1997, plaintiff was again questioned extensively about her ailments and again made no mention of any problems with her fingers or hands.

The ALJ noted plaintiff's complaints of pain in her hands and that x-rays showed some degenerative changes. Nonetheless, he found that plaintiff did not have any nonexertional impairments that would limit her ability to perform a full range of sedentary work. The mere presence of some nonexertional pain does not preclude the ALJ from finding that the claimant can perform a full range of work at a particular exertional level. *Cf. Ray v. Bowen*, 865 F.2d 222, 225-26 (10th Cir. 1989) (holding that presence of nonexertional impairment precludes reliance on grids only when impairment limits full range of work). Based on the record evidence, the ALJ did not err in failing to include a manipulative limitation in his RFC assessment.

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.

Entered for the Court

Carlos F. Lucero
Circuit Judge